**UNITED STEELWORKERS OF AMERICA, AFL–CIO, an Unincorporated Association, et al., Plaintiffs-Appellants,**

v.

**Ralph C. BISHOP, United States Marshal, et al., Defendants-Appellees.**

No. 78–1670.

United States Court of Appeals, Fifth Circuit.

July 6, 1979.

Jerome A. Cooper, Birmingham, Ala., Michael H. Gottesman, Washington, D. C., for plaintiffs-appellants.

J. R. Brooks, U. S. Atty., Elizabeth E. Todd, Asst. U. S. Atty., Birmingham, Ala., for Ralph C. Bishop.

Cabaniss, Johnston, Gardner, Dumas & O'Neal, Sydney F. Frazier, Jr., William F. Gardner, Birmingham, Ala., for Chicago Bridge & Iron Co.

Balch, Bingham, Baker, Hawthorne, Williams & Ward (court-appointed), Harold A. Bowron, Jr., Birmingham, Ala., for Louisiana Power & Light Co.

Before MORGAN, RONEY and VANCE, Circuit Judges.

RONEY, Circuit Judge:

The central question in this case is whether the Norris-LaGuardia Act deprives a district court of jurisdiction to enter, under the facts of this case, an injunction which required a strike-bound steel fabricating plant to give up material that had been delivered to it for fabrication, work that could not go forward because of the strike. We hold that the federal court lacked such jurisdiction.

The facts are simple, the procedure complex. A union was legally striking a plant which fabricated steel. A customer of the plant had delivered steel for fabrication but the plant was unable to complete fabrication because of the strike. The customer demanded delivery of the steel in its then condition. The plant refused. The customer brought a replevin action in federal court asserting diversity jurisdiction. The district court enjoined the plant from failing to deliver the goods and instructed the United States Marshals to make sure no one interfered with delivery. The marshals prevented union pickets from obstructing the people involved with retrieval of the material. The union was not a party to that suit.

Subsequently the union brought this action for, among other things, a declaration that the district court had no jurisdiction to enter that injunction because the Norris-LaGuardia Act specifically deprives the federal court from entering an injunction in a case growing out of a labor dispute.

The plant and its customer contend that the injunction was in aid of a replevin action and did not involve a labor dispute. The union argues that the only reason court aid was sought through replevin was the strike, and that the injunction was issued for the precise purpose of negating the effect of the strike and the picket line, the exact action prohibited by the Norris-LaGuardia Act. The union wins the argument.

This does not mean that all the defendants lose, however, because the complex procedure brought to us involves issues of mootness, judicial immunity, magistrate's jurisdiction, and the inappropriateness of injunctive relief, as well as the central legal question resolved by this decision.

We will fill in factual details and names of the parties first. Then we will conclude that the mootness of the seminal controversy should not preclude consideration of the issues submitted here. We will dismiss the magistrate and the marshals on the ground of judicial immunity, state the law to be applied in cases of this kind should they later arise, and, affirming in part and reversing in part, instruct the district court as to further proceedings in this case.

### Facts

Plaintiffs, United Steelworkers of America and two of its members individually (Union), represent workers at the Birmingham and Cordova, Alabama plants of employer Chicago Bridge & Iron Company (CBI). On October 1, 1977 the Union-CBI collective bargaining agreement had expired, and employees of both plants went on strike.

Louisiana Power & Light Company (LP&L), a corporation with which CBI had contracted to sell, fabricate, clean, and paint various steel parts essential to LP&L's planned power plant construction, was informed by CBI that scheduled completion of the contract could not be assured. LP&L had made progress payments for CBI's work and claimed to be entitled by contract to possession of the contract property. When CBI refused delivery of the property, LP&L filed suit against CBI on October 12 for injunctive relief. The Union was not made a party to the suit and did not seek to intervene.

The district court judge referred the case to Magistrate R. Macey Taylor for preliminary relief and consideration. CBI and LP&L consented to authorization of the magistrate to conduct hearings and issue injunctive relief. An injunction was issued by the magistrate on October 18, entitling LP&L to delivery from CBI and, in view of continuing picketing of the plants, providing protection by United States Marshals for persons and property during the delivery.

On October 20 property was removed from the Birmingham plant by outside riggers and movers hired by LP&L. Efforts to remove Cordova plant property on that date were unsuccessful. A second attempt for delivery at Cordova was made on November 2, and, despite the presence of United States Marshals, removal of property was prevented by the efforts of approximately 40 picketers. When a third attempt was made on December 1, only three picketers were present at the Cordova plant gates, and LP&L's agents, accompanied by approximately 20 armed marshals, were able to remove the property.

The Union sued CBI, LP&L, Magistrate Taylor, and the United States Marshal, claiming the injunction was unlawfully issued and effectuated and seeking declaration of its rights and injunction against their further violation.

### Magistrate's Lack of Power to Enjoin

■ At the outset, although none of the parties has raised the question, we are bound to note that a magistrate lacks power to enter an injunction even in a case where the district court has jurisdiction.

This Court concluded in *Kendall v. Davis*, 569 F.2d 1330 (5th Cir. 1978), that 28 U.S. C.A. § 636(b)(2) does not authorize entry of a final judgment by a magistrate. *See also Cason v. Owen*, 578 F.2d 572, 573 (5th Cir. 1978). Rather, the Court observed, § 636(b)(1) provides for close supervision of the magistrate and for district court review of findings and recommendations.

The magistrate's action in LP&L suit was purportedly taken pursuant to two of the Rules Governing Jurisdiction and Authority of United States Magistrates for the Northern District of Alabama promulgated in accordance with 28 U.S.C.A. § 636(b)(4). Rule 2 which, with reference to 28 U.S.C.A. § 636(b)(1)(B), recites the magistrate's powers with regard to dispositive matters, authorizes the magistrate, at the judge's discretion, to hear motions for injunctive relief and to submit proposed findings of fact and recommendations to the judge. Rule 3, which refers to the consent provision of 28 U.S.C.A. § 636(b)(2), permits designation of a magistrate to preside over civil trials by consent of the parties.

■ It is obvious that the district court cannot by rule confer on a magistrate jurisdiction not permitted by statute. Neither can consent of the parties authorize a magistrate to enter final judgments where power to act in such area is restricted by statute. *See Taylor v. Oxford*, 575 F.2d 152, 154 (7th Cir. 1978).

■ Magistrate Taylor did not have the power under 28 U.S.C.A. § 636 to enter the injunction in the contract case even if the district court could have entered it. On the theory that the district judge somehow incorporated the injunction into his orders, however, we discuss this case as if the district court had taken the action here taken by the magistrate.

### Mootness

■ Defendants contend that the appeal should be dismissed as moot. This Court

may act only in the context of a justiciable case or controversy. *Benton v. Maryland,* 395 U.S. 784, 788, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Because the strike has been settled, there is no longer an existing labor dispute between the Union and CBI. LP&L notes that all of its contract property has now been removed from CBI plants.

▮ The Supreme Court has refused to dismiss as moot, cases in which the former controversy is one " 'capable of repetition, yet evading review.' " *See, e. g., Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). The criteria which preserve such cases for review are two: (1) the challenged action was too brief in duration to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the complaining party will be subjected to the same action again. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Economic strikes of the type in which the Union claims to have had its position undermine by improper injunctive orders rarely last long enough to permit complete judicial review of the controversies they engender. *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 126, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). The actual removal of LP&L's property was accomplished within seven weeks after filing for injunctive relief. Because CBI was enjoined three times during a 1974 strike by other customers who successfully asserted rights to contract property, as well as here, we agree with the Union that the alleged violation of its rights is likely to reoccur and that its only chance of getting judicial review of the issues presented here is for us to refuse to treat the case as moot. *See First National Bank,* 435 U.S. at 774–775, 98 S.Ct. 1407.

Inasmuch as we decide that the district court was without jurisdiction and remand for determination of whether a declaratory decree is sufficient without the need for injunctive relief, LP&L is free to demonstrate to the district court that lack of future contract dealings with CBI make it an inappropriate object of injunctive relief.

## Magistrate Immunity

The district court, in entering findings of fact and conclusions of law, found Magistrate Taylor and the United States Marshal entitled to dismissal on immunity grounds. The Union argues that in a suit which seeks not damages but merely injunctive and declaratory relief, such immunity is inapplicable.

The Supreme Court enunciated the principle of judicial immunity in *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871):

[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.

A number of judicial opinions have distinguished between suits for monetary damages and suits for equitable relief, recognizing judicial immunity only against damage actions. *See, e. g., Slavin v. Curry,* 574 F.2d 1256 (5th Cir.), *withdrawn as moot,* 583 F.2d 779 (1978); *United States v. Clark,* 249 F.Supp. 720, 727 (S.D.Ala.1965); *Larsen v. Gallogly,* 361 F.Supp. 305, 310–311 (D.R.I. 1973), *vacated as moot,* 420 U.S. 904, 95 S.Ct. 819, 42 L.Ed.2d 831 (1975) (injunctive relief, thrust of which is like mandamus, does not shackle judge in performance of his duties by fear of personal consequences); *Person v. Association of Bar of N. Y.,* 554 F.2d 534, 537 (2d Cir.), *cert. denied,* 434 U.S. 924, 98 S.Ct. 403, 54 L.Ed.2d 282 (1977); *Cassidy v. Ceci,* 320 F.Supp. 223, 228 (E.D.Wis.1970).

Others reject such a distinction. *See, e. g., Smallwood v. United States,* 358 F.Supp. 398, 403 (E.D.Mo.), *aff'd,* 486 F.2d 1407 (8th Cir. 1973); *Zimmerman v. Spears,* 428 F.Supp. 759, 761 (W.D.Tex.1977); *Mackay*

*v. Nesbett,* 285 F.Supp. 498, 502–503 (D.Alaska 1968), *aff'd,* 412 F.2d 846 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969); *Atchley v. Greenhill,* 373 F.Supp. 512, 514–515 (S.D.Tex.1974), *aff'd,* 517 F.2d 692 (5th Cir. 1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976); *Conover v. Montemuro,* 477 F.2d 1073, 1104 (3d Cir. 1973) (Aldisert, J., concurring) (enforcement sanctions inherent in the injunctive process, imprisonment or fines for contempt, are pernicious as the threat of damage award).

■ Even if we were to assume that a judge may be the object of equitable relief in proper cases, we conclude that the circumstances of this action would not have been appropriate for issuance of equitable relief against Magistrate Taylor. *See Cheramie v. Tucker,* 493 F.2d 586 (5th Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974) (though requested relief declaratory only, granting of such would interfere with discretionary functions of state judges whose decision would, in effect, be reversed).

The relief sought by the Union is a declaration of its rights, a declaration that defendants acted unlawfully in the course of the replevin suit and an injunction against defendants doing so again. We observe first that the Union can obtain full and complete relief absent the magistrate as defendant. This is not a case where relief must issue against judicial officers who alone can negate the effect of previous unlawful actions. *See Bilick v. Dudley,* 356 F.Supp. 945, 953 (S.D.N.Y.1973) (injunction afforded against administrative law judge and clerk of criminal court only because they maintain records of invalid arrests, expungement of which is necessary for complete relief). Neither does the Union seek affirmative judicial action on the part of the magistrate. *See Timmerman v. Brown,* 528 F.2d 811, 813 (4th Cir. 1975) (writ of mandamus sought against judge who refused to issue warrants against plaintiff's attackers requiring judge to issue such warrants). Similarly we are not constrained to permit relief against Magistrate

Taylor for lack of any other defendant who could adequately assume an adversary position to the Union's. *See Nelson v. Rogers,* 389 F.Supp. 1148, 1150 (W.D.Va.1975) (plaintiff sought declaration of statute's unconstitutionality and injunction against its application). Rather the position adverse to the Union's is fully represented by defendants CBI and LP&L who were parties to the replevin action and the subsequent movement of LP&L's property.

■ We are further inclined to deny relief against the magistrate by the nature of the judicial function by which the Union claims to be aggrieved. Some judicial functions are mandatory and others discretionary. In *Slavin,* for example, plaintiff charged that the judge had cancelled his original bond, permitting conspirators to make complaining witnesses unavailable for Slavin's investigation and that after trial the judge had directed the court reporter to change the trial transcript to plaintiff's detriment. Similarly, in *Bramlett v. Peterson,* 307 F.Supp. 1311, 1322 (M.D.Fla.1969), the judge was enjoined from failing to effectuate indigent plaintiff's Sixth Amendment right to counsel, a "mandatory, nondiscretionary and ministerial duty."

The judicial function attacked by the Union here is clearly of a different sort. The Union takes issue with Magistrate Taylor's construction of a federal statute in such a way as to exclude protection for plaintiff's concerted activity. The interpretation of statutes is a discretionary function made no less so by virtue of this Court's contrary interpretation. The decision of this Court that the replevin action in question did indeed arise from a labor dispute in no way alters the judge's obligation in future clashes between contract rights and union collective bargaining rights to assess the causal connection under § 13 of the Norris-LaGuardia Act, 29 U.S.C.A. § 113. The issuance of equitable relief against the magistrate would unnecessarily risk the inhibition of future exercise of judicial discretionary functions and we conclude that no such relief is warranted.

## Marshal Immunity

■ The defendant United States Marshal enjoys derivative immunity under the circumstances of this case. The magistrate in the replevin suit ordered the United States Marshal to "provide sufficient personnel to protect all persons and property involved in the delivery of [LP&L] of . . Contract Property at the time of . . . delivery." There is no allegation or evidence that activities of the United States Marshal during the transfer of the contract property were other than in strict obedience to the magistrate's order. We recognize the "manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control." *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). *See also McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972).

## Labor Dispute

The central question which the parties need answered in this case is whether the district court had jurisdiction to enter an injunction in the replevin action without strict compliance with the requirements of § 7 of the Norris-LaGuardia Act for injunctions in cases growing out of labor disputes. *See* 29 U.S.C.A. §§ 101–115. Defendants claim that the Norris-LaGuardia Act is inapplicable because the contract suit was not a case growing out of a labor dispute but merely the means of settling a controversy over rights to contract property between the parties to that contract.

The statute plainly deprives the federal court of jurisdiction to enter any injunction "in any case involving or growing out of a labor dispute," except in strict conformity with the Act. There is no contention here that the district court complied with the provisions of that Act. The sole contention is that the injunctive relief given by the court was not in a case involving or growing out of a labor dispute.

Section 13(a) of the Norris-LaGuardia Act explains:

A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry . . .; or have direct or indirect interests therein; . . . whether such dispute is (1) between one or more employers . . . and one or more employees or associations of employees . . .; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section). 29 U.S.C.A. § 113(a).

The section defines "labor dispute" to include controversies over terms and conditions of employment. 29 U.S.C.A. § 113(c). Among "persons participating or interested" are those engaged in the industry in which the dispute is going on or having a direct or indirect interest in that industry. 29 U.S.C.A. § 113(b). *See Diamond Full Fashioned Hosiery Co. v. Leader*, 20 F.Supp. 467, 469 (E.D.Pa.), *appeal dismissed*, 99 F.2d 1001 (3d Cir. 1937) (not restricted to cases where labor dispute is between plaintiff and defendants but includes case where employer seeks injunction against employees of another employer who are engaged in labor dispute with their employer).

■ There was clearly a labor dispute here because the plant's employees were striking concerning the terms and conditions of their employment. 29 U.S.C.A. § 113(c). The question is whether the replevin action brought by the plant's customer for recovery of property to which it was entitled under state law "involved" or "grew out" of that dispute. The fact that the labor dispute was between the employer CBI and its employees' Union, while the case before the district court involved the employer and its customer, cannot control. Were that to conclude the analysis, almost any "struck" employer could be relieved of much of the economic impact of a strike without actually enjoining the strike itself. Nor can the fact that the court did not directly enjoin the strikers control the outcome. It is implicit, if not explicit, in § 13 that a sufficient connection may exist between a litigant not directly involved in the

labor dispute and the labor dispute itself that the case can be said to arise from the labor dispute, even though the union itself is not directly enjoined.

Such seems to be the case here. While LP&L may have had no direct interest in CBI's labor policy or CBI's relationship with its employees as a general proposition, the breakdown of that relationship was clearly the cause of LP&L's contract action against CBI. Concerned that the strike would prevent completion of work on its contract, LP&L sought assurance of due performance from CBI. CBI indicated that the contract work could not continue and LP&L's property would not be voluntarily released, apparently because CBI wanted to have work in the plant when striking employees returned. LP&L then sought an injunction to compel release of the property.

The injunction which resulted from the contract action did not directly address or enjoin union activity. In fact, the injunction order does not mention the strike at all. The provision for as many United States Marshals as needed to effectuate the order of course suggests that the strike was not ignored entirely in the magistrate's decision. The strike is no less the cause of and impetus for the contract suit because the magistrate chose not to look beneath the contract rights asserted therein. *See Lee Way Motor Freight, Inc. v. Keystone Freight Lines,* 126 F.2d 931, 933 (10th Cir.), *cert. denied,* 317 U.S. 645, 63 S.Ct. 37, 87 L.Ed. 519 (1942) (plaintiff could not enjoin defendant carrier to comply with contract when, due to plaintiff's dispute with its employees, employees of defendant refused to handle plaintiff's freight).

While the causal relationship of the labor dispute to the contract action appears to legitimize application of the Norris-La-Guardia Act, it is the effect of an injunction on the labor dispute to which the Act is addressed. Plaintiff asserts that the marshals who were present during removal of LP&L's property interfered with its picketing activities, mostly by "scaring picketers to death." Although the marshals' presence may have indeed been intimidating, there is little evidence that actual picketing activities were impeded. Our concern, rather, is with the effect of the injunction itself on the strike.

The Supreme Court addressed the intent of the Norris-LaGuardia Act in *Brotherhood of Railroad Trainman v. Chicago River & Indiana Railroad,* 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957):

> The Norris-LaGuardia Act . . . was designed primarily to protect working men in the exercise of organized, economic power, which is vital to collective bargaining. . . . Congress acted to prevent the injunctions of the federal courts from upsetting the natural interplay of the competing economic forces of labor and capital.

Had the magistrate not compelled CBI to release LP&L's property, LP&L might have sued CBI for damages. Though the CBI–LP&L contract had a "force majeure" provision which CBI thought would protect it against a damage suit, the risk of such liability if contractual performance were delayed was part of the Union's economic leverage in striking. The injunction in effect disarmed the Union of a significant economic weapon and altered the bargaining stance of CBI and the Union.

Thus we conclude that the district court was without jurisdiction to give injunctive effect to its replevin order. With this understanding, we affirm the dismissal of the case against the magistrate and the marshals. We vacate the judgment denying relief to the plaintiff and remand to the district court for such declaratory relief as may be appropriate. Whether or not the extraordinary remedy of injunctive relief would be appropriate can be determined only after full development of the facts.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.