THIRD DIVISION
 November 20, 1996

No. 1-95-0524

CAROLE J. KATZ, individually, and on behalf of ) Appeal from the
a class of similarly situated individuals, ) Circuit Court of
 ) Cook County.
 Plaintiffs-Appellants/Cross-Appellees, )
 )
 v. )
 )
WESTLAWN CEMETERY ASSOCIATION, INC., )
a corporation, individually and on behalf of all others )
similarly situated; ACACIA PARK CEMETERY AND )
MAUSOLEUM CORPORATION; MOUNT AUBURN )
MEMORIAL PARK, INC.; CHAPEL HILL GARDENS )
(SOUTH); CHAPEL HILL GARDENS (WEST); )
CLARENDON HILLS CEMETERY; CONCORDIA )
CEMETERY; EDEN CEMETERY; ELM LAWN CEMETERY; )
ELMWOOD CEMETERY AND MAUSOLEUM COMPANY; )
GRACELAND CEMETERY AND CREMATORIUM; )
IRVING PARK CEMETERY; MEMORIAL PARK )
CEMETERY; LINCOLN CEMETERY; MONTROSE )
CEMETERY CO.; MT. EMBLEM CEMETERY; MOUNT )
GREENWOOD CEMETERY ASSOCIATION; MOUNT )
HOPE CEMETERY ASSOCIATION, INC.; OAK HILL )
CEMETERY; OAK WOODS CEMETERY ASSOCIATION; )
RIDGEWOOD CEMETERY CO.; ROSEHILL CEMETERY )
CO.; SHALOM MEMORIAL PARK; RANDHILL PARK )
CEMETERY ASSOCIATION, INC; WOODLAWN )
CEMETERY OF CHICAGO, INC.; BEVERLY CEMETERY; )
EVERGREEN CEMETERY & MAUSOLEUM; and )
CEMETERIES ASSOCIATION OF GREATER CHICAGO, )
INC., a corporation, ) Honorable
 ) Dorothy Kinnaird,
 Defendants-Appellees/Cross-Appellants. ) Judge Presiding.

 PRESIDING JUSTICE TULLY delivered the opinion of the court:

 Plaintiff Carole J. Katz, individually, and on behalf of a class of similarly
situated individuals, filed this class action against defendants, Westlawn Cemetery
Association, Inc., on behalf of all others similarly situated, Acacia Park Cemetery and
Mausoleum Corporation, Mount Auburn Memorial Park, Inc., Chapel Hill Gardens
(South), Chapel Hill Gardens (West), Clarendon Hills Cemetery, Concordia Cemetery,
Eden Cemetery, Elm Lawn Cemetery, Elmwood Cemetery and Mausoleum Company,
Graceland Cemetery and Crematorium, Irving Park Cemetery, Memorial Park
Cemetery, Lincoln Cemetery, Montrose Cemetery Co., Mt. Emblem Cemetery, Mount
Greenwood Cemetery Association, Mount Hope Cemetery Association, Inc., Oak Hill
Cemetery, Oak Woods Cemetery Association, Ridgewood Cemetery Co., Rosehill
Cemetery Co., Shalom Memorial Park, Randhill Park Cemetery Association, Inc.,
Woodlawn Cemetery of Chicago, Inc., Beverly Cemetery, Evergreen Cemetery &
Mausoleum, and Cemeteries Association of Greater Chicago, Inc., a corporation. In
her fifth amended complaint, Katz alleged intentional infliction of emotional distress
(count I), tortious interference with property rights (count II), breach of contract
(count III) and civil conspiracy (count IV). On January 6, 1995, the trial court
granted defendants' motion to completely dismiss the complaint under sections 2-615
and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 1994); it is
from this order that plaintiff appeals to this court pursuant to section 6 of article VI
of the Illinois Constitution (Ill. Const. 1970, art. VI,  6) and Supreme Court Rule 301
(155 Ill. 2d R. 301). Defendants cross-appeal from the same order pursuant to
Supreme Court Rule 303(a)(3) (155 Ill. 2d R. 303(a)(3)).
 For the reasons which follow, we affirm.

 FACTUAL BACKGROUND

 The genesis of this action is a labor strike by Chicago-area gravediggers,
represented by their union, Local Union 106, Service Employees International Union,
AFL-CIO, against the 27 defendant cemeteries and the subsequent lockout of strikers
by defendants. On December 19, 1991, after contract renewal negotiations between
defendants, represented by their collective bargaining agent, the Cemeteries
Association of Greater Chicago, Inc. (hereinafter the "Association") and the union
broke down, the union went on strike against four defendant cemeteries: Beverly
Cemetery, Oak Hill Cemetery, Lincoln Cemetery and Memorial Park Cemetery. In
response, defendants locked out their union employees. Consequently, burials in the
ordinary course of business ceased.
 On January 3, 1992, Mrs. Rose Michaels, plaintiff's mother and an Orthodox
Jew, passed away. In 1973, Mrs. Michaels and her husband had purchased burial
plots at Westlawn Cemetery. Orthodox Jewish religious tradition requires burial of
the dead within 24 hours of death. During the lockout, plaintiff requested that her
mother be buried at Westlawn Cemetery, which Westlawn allegedly refused to do due
to the lockout. Consequently, plaintiff's family was unable to bury Mrs. Michaels in
keeping with Orthodox Jewish tradition. The instant litigation followed.

 ISSUES PRESENTED FOR REVIEW

 On appeal, plaintiff posits that: (1) the trial court erred in holding that she did
not have standing to sue the alleged co-conspirators for tortious acts that resulted in
her alleged injury; (2) the trial court erred in holding that her allegations of civil
conspiracy were not stated with sufficient specificity; (3) the trial court erred in
holding that her claim for intentional infliction of emotional distress was time-barred;
and (4) the trial court erred in holding that her claim for intentional infliction of
emotional distress and tortious interference with property rights were preempted by
the National Labor Relations Act.

 OPINION

 From the outset of their briefs, defendants argue that all plaintiff's claims are
preempted by the National Labor Relations Act (NLRA) (29 U.S.C.  151 et seq.
(1988)). We note that plaintiff has not appealed from the trial court's ruling that her
breach of contract claim in count III was preempted and, therefore, we find the issue
has been waived. See Jordan v. Civil Service Commission, 246 Ill. App. 3d 1047
(1993). Accordingly, we express no opinion herein as to the viability of such a claim. 
Nevertheless we agree with defendants that the NLRA preempted plaintiff's tort
claims in counts I, II and IV and, thus, on de novo review affirm the judgment of the
circuit court.
 The Supremacy Clause of the United States Constitution provides that the
Federal Constitution, Federal statutes and treaties "shall be the supreme Law of the
Land; and the Judges in every State shall be bound thereby, any Thing in the
Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art.
VI, cl. 2. Thus, the Supremacy Clause forbids State encroachment on areas regulated
by Congress, whether Congress' mandate is "explicitly stated in the statute's
language or implicitly contained in its structure and purpose." Jones v. Rath Packing
Co., 430 U.S. 519, 525, 51 L. Ed. 2d 604, 97 S. Ct. 1305 (1977). The NLRA, as an act
of Congress, is the supreme law of the land and necessarily preempts any conflicting
State law. Amalgamated Association of Street, Electrical Railway & Motor Coach
Employees of America v. Wisconsin Employment Relations Board, 340 U.S. 383, 95
L. Ed 364, 71 S. Ct. 359 (1951).
 The NLRA reflects a congressional intent to create a national, uniform body
of law regulating labor relations. New York Telephone Co. v. New York State
Department of Labor, 440 U.S. 519, 59 L. Ed. 553, 99 S. Ct. 1328 (1979); Cannon v.
Edgar, 33 F.3d 880 (7th Cir. 1994). The NLRA protects from State interference a
labor union's right to strike an employer and withhold the labor of its members. 29
U.S.C.  158, 159 (1988); National Labor Relations Board v. Drivers, Chauffeurs,
Helpers Local Union No. 639, 362 U.S. 274, 4 L. Ed. 2d 710, 80 S. Ct. 706 (1960). 
The NLRA similarly protects an employer's use of both defensive (National Labor
Relations Board v. Truck Drivers Local Union No. 449, 353 U.S. 87, 1 L. Ed. 2d 676,
77 S. Ct. 643 (1957)) and offensive (American Ship Building Co. v. National Labor
Relations Board, 380 U.S. 300, 13 L. Ed. 2d 855, 85 S. Ct. 955 (1965)) lockouts as a
proper economic weapon, whereby the employer may withhold employment either to
resist its employees' demands or to gain concessions from them. 29 U.S.C.  158(d)
(1988); National Labor Relations Board v. Truck Drivers Local No. 449, 353 U.S. at
92-93.
 The Supreme Court has enunciated two preemption doctrines invalidating
State laws that interfere with the NLRA's goals. First, under San Diego Building
Trades Council v. Garmon, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) (the
Garmon doctrine), and its progeny state that State laws may not interfere with
conduct regulated or even arguably regulated by NLRA, including collective
bargaining. Building & Construction Trades Council v. Associated Builders &
Contractors of Massachusetts/Rhode Island, Inc., 507 U.S. 218, 122 L. Ed. 2d 565, 113
S. Ct. 1190 (1993). The second doctrine, created in Lodge 76, International
Association of Machinists & Aerospace Workers v. Wisconsin Employment Relations
Commission, 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976) (the Machinists
doctrine), holds that State laws may not interfere with the balance of power between
unions and employers established by Federal Law, including those areas that
Congress left under the control of the free play of economic forces. Building &
Construction Trades Council, 507 U.S. 218, 122 L. Ed. 2d 565, 113 S. Ct. 1190. We
agree with the circuit court that under either of these two doctrines, plaintiff's claims
in counts I, II and IV were preempted by the NLRA.
 In Garmon, an employer brought suit against a union seeking an injunction
and damages after the union picketed the employer's place of business. The picketing
was designed to compel the employer to execute a labor contract by exerting pressure
on the employer's customers and suppliers. The supreme court of California affirmed
the State trial court's judgment awarding the employer compensatory damages based
on State tort law.
 The United States Supreme Court reversed, holding that where the activities
a State purports to regulate are even arguably within the ambit of the NLRA, State
jurisdiction must yield in order to prevent the potential frustration of national
purposes. Garmon, 359 U.S. at 244. The Supreme Court noted that State law is
preempted whether a State has acted through "laws of broad general application" or
"laws specifically directed towards the governance of industrial relations." Garmon,
359 U.S. at 244. Illinois courts have consistently recognized and applied the Garmon
doctrine. See e.g., People v. Federal Tool & Plastics, 62 Ill. 2d 549 (1975); NDK
Corporation v. Local 1550, 128 Ill. App. 3d 207 (1984).
 The Garmon court created two narrow exceptions to its holding, finding that
the NLRA does not preempt State remedies: (1) where the activity regulated was "a
merely peripheral concern" to the Federal labor laws, or (2) where the regulated
conduct "touched interests so deeply rooted in local feeling and responsibility that, in
the absence of compelling congressional direction, [it] could not [be] infer[red] that
Congress had deprived the States of the power to act." Garmon, 359 U.S. at 243-44.
 The Garmon court found that the first exception did not apply because
picketing is specifically protected by section 7 of the NLRA and, therefore, is not an
activity of "merely peripheral concern" to the NLRA. Garmon, 359 U.S. at 245-47. 
Similarly, the Supreme Court found that the second exception did not apply because
the case did not involve a State interest deeply rooted in local feeling and
responsibility such as the "maintenance of domestic peace" in the face of "conduct
marked by violence and imminent threats to public order." Garmon, 359 U.S. at 247.
 In case sub judice, plaintiff concedes that her claims, arising from a lockout
protected by the NLRA, are "arguably subject to the jurisdiction of the" National
Labor Relations Board, but contends that her claims are not preempted because they
arise from "interests deeply rooted in local feeling and responsibility." Thus, plaintiff
asserts that "[i]t is hard to imagine anything more deeply rooted in local feeling and
responsibility than burying the dead in accordance with religious and social customs." 
We disagree.
 In Cannon v. Edgar, 33 F. 3d 880 (7th Cir. 1994), the Seventh Circuit directly
rejected plaintiff's contention. In Cannon, the Federal appeals court invalidated the
Burial Rights Act (820 ILCS 130/0.01 et seq. (West 1994)), an act which was passed
by the General Assembly in direct response to the labor dispute that is the subject
of this litigation, which required cemeteries and gravediggers to negotiate for the
establishment of a pool of workers designated to perform religiously required burials
during labor disputes. The Seventh Circuit found the Burial Rights Act was
preempted by the NLRA because it was "an invasion by a state into the collective
bargaining process." Cannon, 33 F. 3d at 884-86.
 In so holding, the Cannon court found that the Burial Rights Act was not
subject to either of the two Garmon exceptions:
 "As to the first Garmon exception, the Burial Rights Act is
 not concerned with something peripheral to the NLRA. 
 Indeed, performing burials, including burials during the
 course of a labor dispute, is the very subject that the
 cemeteries and the gravediggers negotiate about in the
 collective bargaining process.
 And as to the second Garmon exception, there is nothing
 deeply rooted in local feeling that would allow Illinois to
 encroach on the process of collective bargaining in the
 manner directed by the Burial Rights Act. The interment
 of deceased persons is something common to every
 community in the United States. The interment of the
 smaller category at issue here (particular religious groups)
 is not something deeply rooted in local feeling ***." 33 F.
 3d at 885.
 Plaintiff submits that the Cannon court found the Garmon exceptions
inapplicable because that case involved a civil statute rather than State criminal or
tort law. We believe that argument misses the point. What is important here is the
fact that plaintiff's allegations are inextricably linked to the labor dispute such that
her claims would not exist but for that dispute.
 In her fifth amended complaint, plaintiff alleges that because Westlawn and
the other cemeteries did not perform interments as a result of the labor dispute that
ipso facto they committed the various torts. This is not the law. In addition, plaintiff
alleges defendants' joint lockout of the union members to be a civil conspiracy;
however, this is an activity clearly protected by NLRA. Nowhere does plaintiff allege
that any agent or employee of Westlawn Cemetery battered, insulted, defamed or
committed any other tortious and/or criminal acts against her personally that
traditionally would fall into the second Garmon exception. See e.g., Keehr v.
Consolidated Freightways of Delaware, Inc., 825 F.2d 133 (7th Cir. 1987) (plaintiff
union employee can sue his employer for defaming his wife's chastity). Accordingly,
we find that none of plaintiff's tort claims fall within the exceptions to the Garmon
doctrine. Therefore, the trial court did not err in dismissing plaintiff's complaint.
 Alternatively, we find plaintiff's causes of action are preempted under the
Machinists doctrine. In Machinists, the Supreme Court recognized that activities are
protected by Federal labor law not only where they are specifically regulated by the
NLRA, but also where the activity involves a "permissible economic weapon" that
Congress intended to be unrestricted by any governmental power. Machinists, 427
U.S. at 141. Because the NLRA seeks to leave disputes between management and
labor to the "free play of economic forces" without State interference, any State cause
of action that affects the balance of economic weapons available to labor and
management is preempted. Cannon, 33 F. 3d at 885.
 A union's right to strike and an employer's right to lockout are among the most
significant of economic weapons. In Golden State Transit Corp. v. City of Los
Angeles, 475 U.S. 608, 89 L. Ed. 2d 616, 106 S. Ct. 1395 (1986), the Supreme Court
explained, "Congress left some forms of economic pressure unregulated, while it
banned others. States are therefore prohibited from imposing additional restrictions
on economic weapons of self-help, such as strikes or lockouts *** unless such
restrictions presumably were contemplated by Congress." 475 U. S. at 614-16. The
district court opinion in Cannon noted that the Machinists doctrine forbids the States
from even "indirectly imposing additional burdens on economic weapons such as
strikes and lockouts." Cannon v. Edgar, 825 F. Supp. 1349, 1360 (N.D. Ill. 1993),
affirmed, 33 F. 3d 880 (7th Cir. 1994).
 In United Steelworkers of America v. Bishop, 598 F. 2d 408 (5th Cir. 1979), a
union struck and picketed a metals fabrication plant which was consequently unable
to complete delivery of an order of steel to a customer. The customer filed a replevin
action seeking delivery of the steel. After the district court required the factory to
deliver the goods, the union argued on appeal that the district court lacked
jurisdiction over the matter as it arose from a labor dispute. The Fifth Circuit
applied Machinists and agreed that there was no jurisdiction to order the employer
to release the steel and held that the district court had erroneously disarmed the
labor union of a significant economic weapon and altered the bargaining stance of
management and the union. United Steelworkers, 598 F. 2d at 415. In the case sub
judice, plaintiff's lawsuit is attempting to do exactly what the customer in United
Steelworkers tried to do - use a State common law action to inject herself into a labor
dispute and in the process deny both the union and the cemeteries of significant
economic weapons, the power to strike and the power to lockout. This is
impermissible. Thus, we hold no error was committed by the circuit court in
dismissing plaintiff's cause under the Machinists doctrine.
 In light of our disposition of plaintiff's appeal we need not reach the issues
raised by defendants in their cross-appeal which were argued in the alternative had
we reached a different disposition of plaintiff's appeal.
 In light of the foregoing, the judgment of the circuit of Cook County is affirmed
in toto.
 CERDA and GALLAGHER, JJ., concur.