**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3043

_____

SPRING CREEK REHABILITATION AND NURSING
CENTER LLC, DBA Spring Creek Healthcare Center,

Appellant

v.

NATIONAL LABOR RELATIONS BOARD, a
Federal administrative agency; WILLIAM B.
COWEN, in his official capacity as the Acting General
Counsel of the National Labor Relations Board;
MARVIN E. KAPLAN, in his official capacity as
Chairman of the National Labor Relations Board;
DAVID M. PROUTY, in his official capacity as Board
Member of the National Labor Relations Board;
JEFFREY P. GARDNER, in his official capacity as an
Administrative Law Judge of the National Labor
Relations Board

1199SEIU United Healthcare Workers East

(Intervenor)

Amended pursuant to Clerk's Order dated 6/11/25

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2:24-cv-09016)
District Judge: Honorable Jamel K. Semper

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 16, 2025

Before: BIBAS, MONTGOMERY-REEVES, and AMBRO,
Circuit Judges

(Opinion filed: December 3, 2025)

Louis J. Capozzi, Jr.
Brandon S. Williams
Capozzi Adler
2933 N Front Street
Harrisburg, PA 17110

Counsel for Appellant

Steven Bieszczat
Dawn Goldstein
Padraic Lehane
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570

Counsel for Appellees

Katherine H. Hansen
Gladstein Reif & Meginniss
39 Broadway
Suite 2430
New York, NY 10006

Stacey Leyton
Aaron M. Schaffer-Neitz
Altshuler Berzon
177 Post Street
Suite 300
San Francisco, CA 94108

<div style="margin-left: 35%;">

Counsel for Appellee 1199 SEIU United
Healthcare Workers East

</div>

---

OPINION OF THE COURT

---

**AMBRO**, Circuit Judge.

The National Labor Relations Board ("NLRB") issued a complaint against Spring Creek Rehabilitation and Nursing Center LLC ("Spring Creek") alleging it committed unfair labor practices in violation of Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), (a)(5). The NLRB summoned Spring Creek to appear at a hearing before an administrative law judge ("ALJ"). It responded by filing an action in the United States District Court for the District of New Jersey alleging the

NLRB's Members and ALJs are unconstitutionally insulated from removal by the President.

From that premise, Spring Creek moved for a preliminary injunction to prevent the NLRB's administrative proceedings from going forward. The District Court denied that motion, and the NLRB hearing took place. Spring Creek appeals, arguing that being subjected to a decision of an ALJ who enjoys unlawful removal protections will harm it irreparably.

We resolve this appeal solely on a threshold matter the District Court did not have the opportunity to consider. Because this suit grows out of a labor dispute between Spring Creek and its employees, we hold that the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*, strips the District Court of jurisdiction to issue the injunctive relief Spring Creek seeks in this context.

## I.    BACKGROUND

Spring Creek bought a skilled nursing facility from Amboy Nursing and Rehabilitation Center ("Amboy") in November 2021. For years prior to the sale, Amboy maintained a collective-bargaining relationship with 1199SEIU United Healthcare Workers East (the "Union"), which represented the facility's employees. The most recent collective bargaining agreement between the Union and Amboy became effective in June 2017 and expired in June 2020.

The Union filed an unfair labor practices charge against Amboy with the NLRB in August 2021 after learning about

Amboy's agreement to sell the facility. The primary contention was that Amboy violated the expired agreement's successor provisions by selling the facility to Spring Creek without requiring it to "be personally responsible for all unpaid wages, welfare fund payments, vacations, holidays, sick leave and all other monetary items." App. 23.

In the lead-up to its November 2021 takeover, Spring Creek sent a letter to the Union stating that it would not assume the expired collective bargaining agreement. Spring Creek alleged it was free to set terms and conditions of employment unilaterally without bargaining with the Union. In May 2023, the latter amended its unfair labor practices charge with the NLRB to add Spring Creek as a party.

The NLRB issued a complaint against Spring Creek in May 2024 and an amended complaint two months later. It alleges that Spring Creek refused to "bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5)" of the NLRA. App. 41. The complaint also gave notice to Spring Creek that it would be required to appear at a hearing before an ALJ on September 10, 2024.

Spring Creek filed an action in the New Jersey District Court seeking an injunction to stop the NLRB from holding the hearing. It would be unlawful, Spring Creek claimed, because NLRB ALJs enjoy unconstitutional protections from removal by the President. The District Court denied Spring Creek's motion for a preliminary injunction, finding it failed to show that it would suffer irreparable harm in the absence of relief. The NLRB held the hearing but has not yet issued a decision. Spring Creek challenges the denial of its motion for a

5

preliminary injunction, arguing that the court still may enjoin the ALJ from issuing a decision.

On appeal, the NLRB raises a new argument—that the Norris-LaGuardia Act (the "Act"), 29 U.S.C. § 101, strips the District Court of jurisdiction to issue the injunctive relief Spring Creeks seeks. Even though it did not raise this issue in the prior proceedings, we nonetheless consider the NLRB's new anti-injunction argument because it goes to the Court's subject-matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.").

## II.   ANALYSIS

We use a three-part standard to review a district court's decision to grant or deny a preliminary injunction: "we review the Court's findings of fact for clear error, its conclusions of law *de novo*, and the ultimate decision to grant the preliminary injunction for abuse of discretion." *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010).

Here we consider the scope of the Act's anti-injunction provisions. They strip district courts of jurisdiction to issue injunctions in cases growing out of a labor dispute unless they follow strict procedures. The issue is whether this case—an action brought on constitutional grounds to enjoin the NLRB from holding administrative proceedings to decide an unfair labor practices charge—grows out of a labor dispute.

The Act provides:

> [N]o court of the United States[] . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101 ("Section 1").

If Section 1 applies to a case, it does not bar injunctive relief outright. Instead, it strips the district court of jurisdiction to grant the requested relief unless the case fits an exception elsewhere in the Act—here, 29 U.S.C. § 107 ("Section 7"). We also recognize two exceptions to the Act's applicability altogether, under either of which a court has the jurisdiction to afford a party to a labor dispute injunctive relief without following Section 7's requirements. The exceptions are those necessary (1) "to accommodate [the] strong federal policy in favor of arbitration" and (2) "to reconcile the [Act] with other federal statutes." *Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*, 989 F.2d 668, 678 (3d Cir. 1993). To determine whether the District Court had jurisdiction to grant the relief Spring Creek seeks, we consider first whether this case involves or grows out of a labor dispute, and second, whether an exception applies.[1]

---

[1] In *Lukens Steel*, we set out a four-step analysis for determining whether the Act divested a district court of jurisdiction: (1) whether the action involves a labor dispute, (2)

## A. Does this Case Involve or Grow Out of a Labor Dispute?

The Act defines a labor dispute as including "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113(c). This definition is "intentionally broad." *United Tel. Workers, AFL-CIO v. W. Union Corp.*, 771 F.2d 699, 704 (3d Cir. 1985). The Supreme Court explains that the "critical element" is whether "the employer-employee relationship [is] the matrix of the controversy." *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982) (quoting *Columbia River Packers Assn., Inc. v. Hinton*, 315 U.S. 143, 147 (1942)).

The subject of the NLRB's charge against Spring Creek undoubtedly involves a labor dispute. The employer-employee relationship is the "matrix" of that controversy (meaning it frames the dispute) because it concerns whether Spring Creek, an employer, failed to bargain collectively and in good faith with its employees' collective bargaining representative over the terms of their employment. But that does not end our

whether the relief the district court fashioned involved an injunction within the meaning of the Act, (3) whether the district court complied with Section 7, and (4) whether an exception applies. 989 F.2d at 675-76. The relief Spring Creek seeks is an injunction within the meaning of the Act, which satisfies the second step. Moreover, we need not address the third step because the District Court in our case denied injunctive relief without considering whether the case involves or grows out of a labor dispute.

8

inquiry. Spring Creek's action here seeks only to challenge the power of the NLRB to decide the dispute, and the constitutional issues it raises are collateral to the merits of the unfair labor practices charge. Because there is a degree of separation between this case and the underlying dispute, we must consider whether the former still "involves" or "grows out of" Spring Creek's labor dispute with the Union within the meaning of the Act.[2]

The Supreme Court's decision in *Burlington Northern Railroad Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429 (1987), is instructive. It involved a labor dispute similar to what we have here. A collective bargaining agreement expired, setting off years of negotiations between the employer (a railroad operator) and its employees.

---

[2] Spring Creek argues the Act does not apply here because this action does not implicate the public policy goals declared at 29 U.S.C. § 102 ("Section 2"). That argument misunderstands the statute's anti-injunction provisions. Section 1 strips courts of jurisdiction to issue injunctions in cases "involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C. § 101. Then, as an additional limitation on the power of federal courts, Section 1 further provides that no "such . . . injunction [shall] be issued contrary to the public policy declared in this chapter." *Id.* Whether the action involves or grows out of a labor dispute is therefore antecedent to whether issuing the injunctive relief Spring Creek seeks would violate the public policy Section 2 declares. At this stage, our only focus is whether the action involves or grows out of a labor dispute.

*Id*. at 432. Those efforts failed, leading the employees to strike and picket the employer's facilities. *Id*. They then escalated by extending their picketing activities to the facilities of other railroad operators who were not involved in the underlying labor dispute. *Id*. at 433. A district court enjoined "the picketing of any railroads other than those involved in the primary dispute." *Id*. at 431. But the Supreme Court held the Act stripped the trial court of jurisdiction to enter an injunction because the dispute "over the terms and conditions of employment is unquestionably a labor dispute, and the secondary activity against petitioners grows out of that dispute." *Id*. at 440. The distinction between a labor union's primary and secondary picketing activities is important in many contexts because it often determines whether the activity is protected or prohibited by law. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Allied Int'l, Inc.*, 456 U.S. 212, 224 n.22 (1982). The Act's disregard of that distinction shows the statute's breadth. *See Burlington*, 481 U.S. at 441 ("Congress made the definition of 'labor dispute' broad because it wanted it to be broad.") (cleaned up).

Giving the Act a broad construction leads us to conclude that our case "involves" or "grows out of" the labor dispute between the Union and Spring Creek. It could not have brought this action but for the underlying dispute. *See Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 680-81 (6th Cir. 2002) (holding the Act deprived a district court of jurisdiction to enter a consent decree settling constitutional claims collateral to alleged labor law violations because those claims "would not exist *but for* the underlying [labor dispute]") (emphasis added). And if the District Court enjoined the NLRB's administrative proceedings, it would prevent the tribunal tasked by Congress with deciding the Union's unfair

labor practices charge from resolving the merits of the case. That would put a thumb on the scale for Spring Creek in the underlying dispute, precisely the kind of "judicial interference in management-labor relations" the Act's anti-injunction provisions seek to prevent. *United Tel. Workers*, 771 F.2d at 704.

Our reasoning in *Lukens Steel* supports this result. There, a union sought to arbitrate claims it brought against an employer alleging violations of a collective bargaining agreement. 989 F.2d at 671. Attempting to enjoin the arbitration, the employer filed a district court action. *Id*. We held that it grew out of the labor dispute over whether the employer violated the collective bargaining agreement. *Id*. at 676 (holding the Act's "broad definition of 'labor dispute' compels such a result."). Our case similarly involves an employer's action challenging the forum in which the merits of the dispute will be resolved. Whereas the union in *Lukens Steel* sought an arbitral forum, here the Union filed unfair labor practices charges with the NLRB. It would be incongruous with *Lukens Steel* to hold that Spring Creek's action does not "grow out" of its dispute with the Union just because the claims Spring Creek raises challenge only the lawfulness of the forum. *See also AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 760 (7th Cir. 2003) ("That the arbitration is not *itself* a 'labor dispute' does not make this suit less one 'growing out of' a labor dispute.") (emphasis in original).

Several district courts have reached the same conclusion we do. *See Hannam Chain USA, Inc. v. NLRB*, 2025 WL 3204539, at *2-3 (D.D.C. Nov. 17, 2025) (finding that a suit to enjoin NLRB administrative proceedings based on constitutional challenges to the agency's structure can fall

11

within the ambit of the Act); *Red Rock Resorts, Inc. v. NLRB*, 2025 WL 2784607, at \*7 (D. Nev. Sept. 30, 2025) (same); *Amazon.com Services LLC v. NLRB*, 2025 WL 466262, at \*4 (C.D. Cal. Feb. 5, 2025) (same); *VHS Acquisition Subsidiary No. 7 v. NLRB*, 2024 WL 4817175, at \*7 (D.D.C. Nov. 17, 2024) (same), *appeal dismissed sub nom. VHS Acquisition Subsidiary No. 7, Inc. v. NLRB*, 2024 WL 5232662 (D.C. Cir. Dec. 26, 2024).

Courts are not unanimous on this question, however. Before proceeding to the next step, we pause to address *Space Exploration Technologies Corp. v. NLRB*, in which the Fifth Circuit held an employer's action to enjoin the NLRB's administrative proceedings against it did not "grow out" of the underlying labor dispute with its employees. 151 F.4th 761, 770 (5th Cir. 2025). We part from that holding.

*Space Exploration* relies on the text of 29 U.S.C. § 113 ("Section 13") to hold that the Act cannot apply to an employer's suit against the NLRB because the agency is not itself involved in the same industry as the parties to the labor dispute. But the statute creates no such requirement. It provides that "[a] case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry." 29 U.S.C. § 113.[3] Indeed, the NLRB is not engaged in the same industry as Spring Creek. Even though the agency is a party to the suit, the case involves Spring Creek's employees engaged in the same industry as Spring Creek. This

---

[3] The statute lists other ways a case can qualify as growing out of a labor dispute. *See generally* 29 U.S.C. § 113(a). Because our case involves persons engaged in the same industry, we do not consider whether it could also qualify as growing out of a labor dispute for other reasons.

12

is so because the Union charged Spring Creek with unfair labor practices before the NLRB, and this suit will determine whether the agency can lawfully decide the charge.[4] The Act does not require the Union to be a party instead of the NLRB for the case to "grow out" of the underlying labor dispute. *See Jacksonville Bulk Terminals*, 457 U.S. at 711 (explaining that because the Act "merely requires that the case involve 'any' labor dispute," it does not "require[] that each dispute relevant to the case be a labor dispute" (emphasis omitted)); *see also United Steelworkers of Am., AFL-CIO v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979) ("The fact that the labor dispute was between the employer . . . and its employees' Union, while the case before the district court involved the employer and its customer, cannot control.").

*Space Exploration* also suggests the Act cannot apply here because this is not a case "between [an] [e]mployer[] and [its] employees," nor does it "have [any]thing to do with employee boycotts, union organization, or labor strikes." 151 F.4th at 770. The Fifth Circuit's conclusion cannot be squared with *New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552 (1938), in which a grocery store operator sued a civil rights organization to enjoin its members from picketing its stores. The Act barred injunctive relief in that context because the underlying dispute was a labor dispute and the organization's members were "persons interested in the dispute," *id*. at 60, even though the case was not between an employer and its employees, nor was the organization "engaged in any business

---

[4] The Union is also an intervenor in this case. Its interest here is strong—it is the party that filed a complaint against Spring Creek with the NLRB, and it intervenes now to protect its interest in the NLRB proceeding.

competitive" with the store operator. *Id*. at 555. And it was of no consequence either that the grocery store's claim did not sound as a dispute over employment terms but rather "conspiracy in restraint of trade." *Id*. at 558-59.

We also decline to adopt *Space Exploration's* construction of Section 13 because it renders 29 U.S.C. § 160(h) mere surplusage. That section excepts suits involving NLRB orders from the Act's anti-injunction provisions. It provides:

> When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by chapter 6 of this title.

29 U.S.C. § 160(h).

*Space Exploration* suggests that the Act cannot apply to a suit against the NLRB. 151 F.4th at 770. If Congress meant to exempt all such suits from the Act's anti-injunction provisions, it could have expressly done so. It did not. Section 160(h) only exempts some suits involving the NLRB from the Act's reach: those challenging an order of the Board. The statutory scheme thus contemplates that suits against the NLRB can be subject to the Act's anti-injunction provisions until the Board issues an order. To hold otherwise would render § 160(h) surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is

14

strongest when an interpretation would render superfluous another part of the same statutory scheme.").

*Space Exploration's* interpretation of Section 13 also risks rendering superfluous a provision of the NLRA. Under 29 U.S.C. § 178(a), the Government may "obtain an injunction against union strikes and lockouts by . . . showing that the strike or lockout affects an entire industry or a substantial part thereof and imperils the national health or safety." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 348 (2024) (cleaned up). Section 178(b) exempts such suits from the Act's anti-injunction provisions. But *Space Exploration* suggests that suits involving the Government as a party do not implicate those provisions because "they are not between [an] [e]mployer[] and [its] employees," nor are the parties in such suits "engaged in the same industry, trade, craft, or occupation." 151 F.4th at 770 (quoting 29 U.S.C. § 113(a)).[5] If

---

[5] It may be possible to read the *Space Exploration* decision narrowly to avoid inferring this suggestion. It holds that suits against the NLRB in this context cannot involve or grow out of a labor dispute for three reasons: (1) because "they are between the Employers and the NLRB" rather than "the Employers and their employees"; (2) because "the employers are not 'engaged in the same industry, trade, craft, or occupation'"; and (3) because "the claims concern Article II and the separation of powers" rather than "employee boycotts, union organization, or labor strikes." 151 F.4th at 770 (quoting 29 U.S.C. § 113(a)). The third reason would likely distinguish any suit brought under 29 U.S.C. § 178(a) from a suit to enjoin the NLRB's administrative proceedings. Unlike a separation-of-powers challenge, a suit the Government brings under 29 U.S.C. § 178(a) would presumably have something "to do with employee boycotts, union organization, or labor strikes." 151

*Space Exploration* is correct that the Act's anti-injunction provisions do not apply to cases involving the Government as a party in the first place, then § 178(b) would serve no purpose in expressly exempting suits the Government brings to enjoin strikes that threaten national safety from the Act's reach. The interpretation of Section 13 we adopt today does not render § 178(b) mere surplusage.

*Space Exploration* also holds the Act does not apply to suits like this one because Congress's aim in passing the statute "was not . . . to bar constitutional challenges to agency structure." 151 F.4th at 770. Again, the Fifth Circuit's interpretation of the Act is to us too narrow. True, Congress passed it "primarily to limit the availability of injunctive relief in labor strikes" at a time when employers frequently sought to enjoin strikes through ex parte applications to federal courts. *United Tel. Workers*, 771 F.2d at 703-04. However, its anti-injunction provisions also serve the "broader goal of . . . prevent[ing] judicial interference in management-labor relations." *Id*. Congress has not exempted challenges to agency

---

F.4th at 770. Therefore, if *Space Exploration's* holding is limited only to cases implicating all three of the circumstances it discusses, then perhaps it does not suggest that all suits involving the Government as a party must necessarily fall outside the ambit of the Act's anti-injunction provisions. But we cannot be so sure. The decision does not qualify its reasoning in this way—it merely provides three reasons supporting its application of Section 13 without delineating between the necessary and sufficient grounds for its holding. Because the decision could be construed to suggest that all cases involving the Government as a party fall outside the Act's reach, we address that suggestion here.

structure from the Act's ambit. And the Supreme Court instructs that it is to be interpreted broadly. *See Jacksonville Bulk Terminals*, 457 U.S. at 708 ("This court has consistently given the anti-injunction provisions of the Norris-LaGuardia Act a broad interpretation . . . ."). We therefore decline to read into the Act an exception that does not exist.[6]

## B. Does an Exception to the Act Apply?

The next step is to determine whether our case "falls within a judicially-carved exception to the [Act]." *Lukens Steel*, 989 F.2d at 676. To repeat, the two exceptions are (1) "those to accommodate the strong federal policy in favor of arbitration" and (2) "those to reconcile the [Act] with other

---

[6] In addition to its textual and policy arguments, *Space Exploration* also holds the Act does not strip a district court of jurisdiction in this context based on its application of the three factors set out in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). 151 F.4th at 771. Those factors are (1) whether the limitation of jurisdiction would "foreclose all meaningful judicial review," (2) whether the suit is "wholly collateral to a statute's review provisions," and (3) whether the claims are "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212-13. Courts use the *Thunder Basin* factors to determine whether a "special statutory review scheme . . . preclude[s] district courts from exercising jurisdiction over challenges to federal agency action." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023); *see also Thunder Basin*, 510 U.S. at 207. But *Space Exploration* recognizes the Act's anti-injunction provisions do not create a "special statutory review scheme." 151 F.4th at 771. The *Thunder Basin* factors are thus off point in addressing the jurisdictional question here.

federal statutes." *Id*. at 678. Neither applies—this case does not involve arbitration, and Spring Creek's claim for injunctive relief is not based on any federal statutory rights.

<p style="text-align:center">*   *   *</p>

Spring Creek's action to enjoin the NLRB from subjecting it to administrative proceedings grows out of the underlying labor dispute with its employees over whether it committed unfair labor practices by failing to bargain collectively and in good faith with the Union. Congress did not limit the applicability of the Norris-LaGuardia Act only to cases involving identical parties to that dispute. And it did not create an exception for challenges to agency structure. Congress therefore does not exempt an action in this posture from the reach of the Act. It stripped the District Court of jurisdiction to issue an injunction against the NLRB. We vacate its order denying injunctive relief and remand to that Court for further proceedings consistent with this opinion.

MONTGOMERY-REEVES, *Circuit Judge*, concurring.

I agree with the majority that Spring Creek's claims must be dismissed for lack of subject-matter jurisdiction, but I reach that conclusion based solely on Article III of the Constitution.

Article III grants federal courts jurisdiction to oversee certain "Cases" and "Controversies," and we are constrained by its reach. U.S. CONST. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual [C]ases or [C]ontroversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation omitted). Those Cases and Controversies exist only where a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also NLRB v. Starbucks Corp.*, 125 F.4th 78, 88 (3d Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up)). Spring Creek's claim fails at the first step; it does not state an injury in fact.

Under Article III, when a litigant challenges the NLRB's authority based on "unconstitutional removal protections," it "must show that the constitutional infirmity actually caused harm." *Starbucks*, 125 F.4th at 88. The Supreme Court theorized that a litigant may be harmed if an agency acted after a district court enjoined the President from removing a key agency decisionmaker or if the President expressed that he would remove the decisionmaker but for the removal protections. *Collins v. Yellen*, 594 U.S. 220, 259–60 (2021). We explained that those *Collins* hypotheticals are "examples of how . . . harm might be demonstrated" to allege an injury-in-fact for Article III standing. *Starbucks*, 125 F.4th at 88. But Spring Creek has not alleged that any of the *Collins* hypotheticals are at play. *Id.* Nor has Spring Creek alleged a "here-and-now injury" sufficient for a constitutional harm. *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 615 (3d Cir. 2024). Rather, its alleged injury boils down to an argument that "[b]eing subject to unconstitutional agency

1

authority . . . qualifies as a here-and-now injury." App. 26 (internal quotation omitted). But we already concluded that a plaintiff had to allege something more for this kind of here-and-now injury—"subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," *Axon Enter. Inc. v. FTC*, 598 U.S. 175, 191 (2023). *Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th at 615. We explained, for example, they could allege "a compensable and identifiable harm" or that "this suit would [not] have been undertaken *but-for* a president's authority to remove" NLRB members. *Id.* at 615–16; *see also Collins*, 594 U.S. at 274 (Kagan, J., concurring). Without these kinds of allegations, Spring Creek has fallen short of alleging an injury-in-fact.

Spring Creek's inability to allege adequately that it was harmed by any restrictions on removing NLRB members or Administrative Law Judges is fatal to its Article III standing, and the Constitution prohibits this Court and the District Court from hearing its claim. Accordingly, I would dismiss this claim for lack of subject-matter jurisdiction on that basis alone. For that reason, I respectfully concur in the judgment.