**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, *Petitioner,* | No. 22-70002 |
| | NLRB No. 32-CA-282957 |
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2015, *Intervenor,* | OPINION |
| v. | |
| AAKASH, INC., DBA Park Central Care and Rehabilitation Center, *Respondent.* | |

| | |
|---|---|
| AAKASH, INC., DBA Park Central Care and Rehabilitation Center, *Petitioner,* | No. 22-70008 |
| | NLRB No. 32-CA-282957 |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, *Respondent.* | |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted December 7, 2022
San Francisco, California

Filed January 27, 2023

Before: Susan P. Graber, Evan J. Wallach,[*] and Paul J.
Watford, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[**]

### National Labor Relations Board

The panel granted a petition for enforcement brought by the National Labor Relations Board ("the Board"), and denied a cross-petition for review of an order of the Board, issued against Aakash, Inc., which held that Aakash violated Sections 8(a)(5) and (1) of the National Labor Relations Act, by refusing to recognize and bargain with Service Employees International Union, Local 215.

Aakash argued that the Board's General Counsel, Jennifer Abruzzo, lacked authority to prosecute the unfair

---

[*] The Honorable Evan J. Wallach, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

labor practice charge because the President could not remove the Board's previous General Counsel, Peter Robb, without cause during the four-year term to which he had been appointed, making his successor's acts *ultra vires* and void.  The panel rejected Aakash's contentions.  The panel held that the President may remove the Board's General Counsel at any time and for any reason.  The panel held that several canons of construction supported their conclusion.  Even if history mattered here, past administrations have maintained that the General Counsel was removable at will.  Finally, neither of the established two exceptions to the President's plenary removal power applied here.  First, Congress can impose removal restrictions on a group of principal officers serving as part of a multimember body of experts who do not wield substantial executive power, but that exception does not apply because the General Counsel is a single officer with independent functions.  Second, Congress can remove restrictions on inferior officers with limited duties and no policymaking or administrative authority, but the exception does not apply because the General Counsel exercised significant administrative authority, and was not an inferior officer.  The panel noted that their decision was in accord with the only other circuit precedent on this issue in *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 443-44 (5th Cir. 2022).

Aakash contended that the certified bargaining unit was inappropriate because the Registered Nurses (RNs) that it included were statutory supervisors.  The panel disagreed with Aakash's claims that the RNs were supervisors because they held authority to assign, discipline, and responsibly direct employees, and they exercised that authority using independent judgment.  First, Aakash failed to present

sufficient evidence to prove that the RNs assigned work using independent judgment within the meaning of 29 U.S.C. § 152(11). The record suggested that they simply paired nursing students to groups of patients using a schedule created by the Director of Staff Development. Nor did the RNs discipline employees. The power to issue verbal reprimands or report to higher-ups did not suffice. Finally, Aakash did not prove that the RNs responsibly directed other employees using independent judgment.

The panel therefore concluded that General Counsel Robb was lawfully removed, and the RNs were not statutory supervisors under the National Labor Relations Act.

## COUNSEL

Heather S. Beard (argued), Senior Attorney; Elizabeth A. Heaney and Meredith L. Jason, Supervisory Attorneys; David Habenstreit, Assistant General Counsel; Ruth E. Burdick, Deputy Associate General Counsel; Peter Sung Ohr, Deputy General Counsel; Jennifer A. Abruzzo, General Counsel; National Labor Relations Board; Washington, D.C.; Benjamin M. Shultz (argued) and Scott R. Mcintosh, Attorneys, Appellate Staff; Brian M. Boynton, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Petitioner.

David A. Rosenfeld and Manuel A. Boigues, Weinberg Roger & Rosenfeld, Emeryville, California, for Intervenor.

Dylan B. Carp (argued), Jackson Lewis PC, San Francisco, California; Louis J. Cannon, Jackson Lewis PC, Baltimore, Maryland; for Respondent.

# OPINION

GRABER, Circuit Judge:

The National Labor Relations Board (the Board) petitions for enforcement of a final order issued against Aakash, Inc. d/b/a Park Central Care and Rehabilitation Center (Aakash). The Board ruled that Aakash had violated Sections 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(5) and (1), by refusing to recognize and bargain with Service Employees International Union, Local 2015 (the Union).[1] Aakash cross-petitions, admitting that it refused to bargain but asserting that we should nonetheless vacate the Board's order for two reasons. First, Aakash argues that the Board's General Counsel, Jennifer Abruzzo, lacked authority to prosecute the unfair labor practice charge because the President could not remove the Board's previous General Counsel, Peter Robb, without cause during the four-year term to which he had been appointed, making his successor's acts *ultra vires* and void. Second, Aakash contends that the certified bargaining unit is inappropriate because the Registered Nurses (RNs) that it includes are statutory supervisors. We reject both of Aakash's arguments and grant the Board's petition for enforcement of its order.

## FACTUAL BACKGROUND

Aakash operates a skilled nursing facility in California, providing round-the-clock care for both short-term rehabilitation patients and long-term residents. The facility has 99 beds. The senior management team includes the

---

[1] The Union has intervened on behalf of the Board.

Administrator and a Director of Staff Development. The Nursing Department's management includes a Director of Nursing, an Assistant Director of Nursing, and a supervisor of Licensed Vocational Nurses (LVNs). About 90 nurses work at the facility, including six RNs, 13 LVNs, and 60 nursing assistants.

The Director of Nursing and Assistant Director of Nursing work standard daytime shifts, Monday through Friday. The RNs and other nursing staff work in three shifts: day, night, and overnight. The Director of Nursing sets the work schedules for the RNs and LVNs, and the Director of Staff Development sets the work schedule for the nursing aides. At the start of each shift, an RN or an LVN fills out an assignment sheet, pairing each scheduled nursing aide with a group of patients.

Disciplinary action at the facility is rare. On one occasion, an RN verbally warned a nursing assistant that falling asleep on the job constituted misconduct. The RN then wrote a note to the Director of Staff Development explaining the misconduct that she had witnessed.

PROCEDURAL HISTORY

The dispute in this case arose when, in 2020, the union representing Aakash's nursing aides sought to add two voting groups to its bargaining unit, one for the RNs and one for the LVNs. Aakash challenged the RNs' eligibility for inclusion in the bargaining unit, asserting that the RNs are statutory supervisors and thus ineligible for inclusion. The Board's Regional Director determined that Aakash did not meet its burden of proving that the RNs are statutory supervisors. The Regional Director then ordered a "self-determination" election, which the Union won. The Board

denied Aakash's request for review of the Regional Director's decision.

In March 2021, the Union requested that Aakash recognize the new bargaining unit and agree to bargain with it. When Aakash refused, the Union filed an unfair labor practice charge. In October 2021, the Board's General Counsel issued a complaint against Aakash for its failure to comply with § 8(a)(5) and (1) of the Act.

In January 2021, while the dispute between Aakash and the Board was ongoing, President Biden took office and immediately removed the Board's then General Counsel, Peter Robb. General Counsel Robb had originally assumed office for a four-year term in November 2017. In February 2021, President Biden nominated Jennifer Abruzzo to replace Robb. The Senate confirmed General Counsel Abruzzo, and she assumed the role in July 2021.

In December 2021, the Board issued its decision, finding that Aakash had refused to recognize and bargain with the Union in violation of the Act. The Board also rejected Aakash's contention that General Counsel Abruzzo lacked the authority to prosecute unfair labor practices because the President had removed former General Counsel Robb unlawfully.

## DISCUSSION

A. The President May Remove the Board's General Counsel at Will.

Title 29 U.S.C. § 153(d) provides that the Board's General Counsel "shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years." The statute contains no provision precluding

removal of the General Counsel or requiring cause for removal.

Aakash argues that the existence of a term of office implicitly carries with it a prohibition on removal without cause during that term. The Supreme Court rejected that argument 125 years ago in Parsons v. United States, 167 U.S. 324 (1897). There, the President appointed a United States Attorney for the Northern District of Alabama to a four-year term but removed him before that term ended. Id. at 327–28. The Attorney argued that he was entitled to serve for the entire four-year term to which he had been appointed. Id. at 327. The Court held that the President acted appropriately in removing the Attorney before the end of his four-year term because a statutory provision establishing a fixed four-year term, without any additional limitation, does not affect the President's discretionary power of removal. Id. at 338–39, 342–44; see also Shurtleff v. United States, 189 U.S. 311, 316 (1903) (The right of removal "does not exist by virtue of the [statutory text], but it inheres in the right to appoint, unless limited by constitution or statute. It requires plain language to take it away."). The Supreme Court has cited Parsons for the proposition that fixed terms do not confer removal protection. Myers v. United States, 272 U.S. 52, 142–43 (1926); see also Stanley v. Gonzales, 476 F.3d 653, 660 (9th Cir. 2007) (so holding with respect to "inferior officers" such as a United States Trustee).

Contrary to Aakash's contentions, Humphrey's Executor v. United States, 295 U.S. 602 (1935), and Wiener v. United States, 357 U.S. 349 (1958), do not support its argument. In Humphrey's Executor, the Court held:

> [T]he fixing of a definite term subject to removal for cause, unless there be some

> countervailing provision or circumstance indicating the contrary, which here we are unable to find, is enough to establish the legislative intent that the term is not to be curtailed in the absence of such cause.

295 U.S. at 623 (emphasis added). But the wording of the fixed term of office in Humphrey's Executor included an express provision regarding for-cause removal. Id. at 620. Here, the wording of the fixed term of office for the Board's General Counsel includes no removal restrictions. Thus, Humphrey's Executor is inapposite.

Aakash's reliance on Wiener also is misplaced. There, the Court inferred removal protections for members of the War Claims Commission (the Commission), an adjudicative body responsible for determining claims for compensation arising out of injuries suffered in World War II. Wiener, 357 U.S. at 349–50. The Court held that Congress had created the Commission to adjudicate claims "free from the control or coercive influence" of the President or of the Congress itself. Id. at 355 (citation omitted). For that reason, removal protections were implied. Id. at 355–56. Wiener is distinguishable because the General Counsel is not a member of an adjudicative body. In Wiener, the Court inferred removal restrictions because of the nature of the Commission's task: its responsibilities had an "intrinsic judicial character." Id. at 355. By contrast, Congress explicitly granted all judicial or quasi-judicial functions to the Board and gave the General Counsel investigative, prosecutorial, and managerial responsibilities. 29 U.S.C. § 153(d); see NLRB v. United Food & Com. Workers Union, Loc. 23, 484 U.S. 112, 124 (1987); Exela Enter. Sols., Inc. v. NLRB, 32 F.4th 436, 443–44 (5th Cir. 2022).

In short, when Congress declared that the General Counsel "shall be appointed . . . for a term of four years," it stipulated only the requirements of the initial appointment. The President may not appoint a General Counsel for a one-year probationary period or for ten years, for example, or without the advice and consent of the Senate.

Contrary to Aakash's arguments, several canons of construction support our conclusion that the President may remove the Board's General Counsel at any time and for any reason. Aakash contends that the provision pertaining to Board Members and the provision pertaining to the General Counsel, when read together, suggest that the General Counsel may be removed for causes beyond those that can justify removal of the Board Members. Section 153(a) states that Board Members shall be appointed by the President, with the advice and consent of the Senate, to a five-year term. 29 U.S.C. § 153(a). Unlike the section pertaining to the General Counsel, though, Section 153(a) provides that Board Members "may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." Id. When Congress uses text in one section of a statute but omits it from another section of the same statute, we ordinarily presume that Congress acted intentionally, and we give effect to the distinction. Collins v. Yellen, 141 S. Ct. 1761, 1782 (2021). Applying that principle here, the statutory text shows that Congress intended to constrain the President to specific reasons to remove Board Members but placed no limit on the President's power of removal with respect to the General

Counsel.**²**   Had Congress intended to limit the President's power to remove the General Counsel with a broadened definition of cause, Congress would have added contrasting wording in Section 153(d) concerning removal, such as the General Counsel "may be removed by the President for cause of any kind."  Instead, Section 153(d) is entirely silent regarding cause for removal.**³**

Another canon of construction comes into play as well. If the mere statement of a term of office carried with it a requirement for for-cause removal, as Aakash asserts, the specification of cause in Section 153(a) would be surplusage.  We generally interpret a statute to avoid making a part of it unnecessary.  Corley v. United States, 556 U.S. 303, 314 (2009).

Moreover, Congress is presumed to "legislate[] against the backdrop of existing law."  Parker Drilling Mgmt. Servs., Ltd. v. Newton, 139 S. Ct. 1881, 1890 (2019) (citation and internal quotation marks omitted).   That the President is presumed to have unfettered discretion to remove an executive officer is at this point settled law.  See Myers, 272 U.S. at 119 (noting that "the grant of executive power to the

---

² We need not and do not decide whether the limitation on removal of Board Members is permissible.  See Seila Law LLC v. CFPB, 140 S. Ct. 2183 (2020) (holding that for-cause removal restrictions on the Consumer Financial Protection Bureau's Director violated the separation of powers); Free Enter. Fund v. Public Co. Acct. Oversight Bd., 561 U.S. 477 (2010) (holding that dual-layer for-cause removal restrictions for members of the Public Company Accounting Oversight Board were unconstitutional).

³ Wiener, 357 U.S. at 350, is distinguishable on this ground, too. The statute in question there was entirely silent, whereas here, Congress created contrasting provisions in neighboring sections of the same statute.

President . . . carr[ies] with it the power of removal"); Shurtleff, 189 U.S. at 314–15 (recognizing that "the President can, by virtue of his general power of appointment, remove an officer"). Congress was aware of the Supreme Court's long line of precedent establishing the presumption in favor of the President's power of removal when it enacted Section 153(d) without incorporating any constraint on that power.

Aakash also relies on history, specifically, the fact that the President's removal of former General Counsel Robb is the first formal removal of a General Counsel of the Board. We question the relevance of that argument; the statute either constrains the President's discretion or it does not. But even if we assume that history matters here, past administrations have maintained that the General Counsel is removable at will. See Memorandum from John Roberts, Assoc. White House Counsel, to Fred Fielding, White House Counsel (July 18, 1983), https://www.reaganlibrary.gov/pub lic/digitallibrary/smof/counsel/roberts/box-033/40-485-690 8381-033-007-2017.pdf (memorandum written by current Chief Justice John Roberts, then an attorney in the White House Counsel's Office, stating that the General Counsel of the Board is removable at will, and noting that the Eisenhower Administration took the same position in 1959); 96 Cong. Rec. App'x A7989 (1951) (extension of remarks by Rep. Paul Shafer with excerpt of Robert N. Denham, And So I Was Purged, THE SATURDAY EVENING POST, Dec. 30, 1950, which reported that former General Counsel Robert Denham understood that he was "summarily fired" as General Counsel of the Board and that "the President had full authority to remove [him] at any time."); Harry S. Truman, The President's News Conference of February 16, 1950, 1950 Pub. Papers 159, 163 (1950) (President Truman

noting, in response to a question as to whether he had the power to fire General Counsel Denham, that "[i]f I have the power to appoint, I have the power to dismiss, except if the law provides that it can't be done.").

Finally, Aakash argues that, even if the statute does not forbid dismissal without cause, during the General Counsel's four-year term, "the President has no constitutional prerogative to remove" the General Counsel, because the General Counsel "does not exercise substantial executive power." To be sure, the Court has established two exceptions to the President's plenary removal power, but neither applies here.

First, Congress can impose removal restrictions on a group of principal officers serving as part of a multimember body of experts who do not wield substantial executive power. Seila Law, 140 S. Ct. at 2199–2200. That exception does not apply because the General Counsel is a single officer with independent executive functions.

Second, Congress can impose removal restrictions on inferior officers "with limited duties and no policymaking or administrative authority." Id. at 2200. That exception does not apply either, because the General Counsel exercises "significant administrative authority," cf. Morrison v. Olson, 487 U.S. 654, 691 (1988), and is not an inferior officer. The General Counsel supervises the officers and employees in the regional offices, as well as all attorneys except for administrative law judges and Board Members' legal assistants. 29 U.S.C. § 153(d). The General Counsel also has final authority, on behalf of the Board, to investigate, to issue complaints, and to prosecute unfair labor practice charges. Id.; see Exela, 32 F.4th at 444 (stating that the position of the General Counsel is "core to the executive

function"); see also id. at 445 (noting that removal restrictions for the General Counsel could impede the President's performance of his Article II duties). Accordingly, the President's removal power remains plenary in this case.

Our decision today accords with the only other circuit precedent on this issue. We come to the same conclusion as, and agree with, the Fifth Circuit's opinion in Exela. There, the Fifth Circuit held that the Act does not insulate the General Counsel from removal because it is silent as to tenure protections for the General Counsel. 32 F.4th at 441–42, 445. We see no reason to part ways with our sister circuit's persuasive discussion.

B.  The Board Permissibly Found that Aakash Failed to Show that the RNs Are Supervisors.

As the party asserting that the RNs have supervisory status, Aakash bears the burden of proving that status. NLRB v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 711–12 (2001). We "defer to the Board's reasonably defensible interpretation and application of the [Act]." Providence Alaska Med. Ctr. v. NLRB, 121 F.3d 548, 551 (9th Cir. 1997). The deference that we give the Board is particularly strong here, "[b]ecause the Board has expertise in making the subtle and complex distinctions between supervisors and employees . . . ." Id. (citation and internal quotation marks omitted).

The Act protects the right of employees to self-organize and to bargain collectively, 29 U.S.C. § 157, but excludes supervisors from its protection, 29 U.S.C. § 152(3). The Act defines a supervisor as:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). Employees are statutory supervisors if "(1) they hold the authority to engage in any 1 of the 12 . . . supervisory functions [listed in § 152(11)], (2) their exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment, and (3) their authority is held in the interest of the employer." Ky. River, 532 U.S. at 713 (citation and internal quotation marks omitted).

Neither party disputes that the third factor—authority held in the interest of the employer—applies here. The parties dispute the applicability of the first and second factors: authority to engage in supervisory functions and the use of independent judgment. Aakash claims that the RNs are supervisors because they hold authority to (1) assign, (2) discipline, and (3) responsibly direct employees, and they exercise that authority using independent judgment. We disagree.

First, Aakash failed to present sufficient evidence to prove that the RNs assign work using independent judgment within the meaning of § 2(11). The record suggests that they simply pair nursing assistants to groups of patients using a schedule created by the Director of Staff Development. See

Providence, 121 F.3d at 552 (supporting the Board's finding that charge nurses who assign nurses to patients within the parameters of the supervisory nurse's monthly assignment schedule do not assign employees using independent judgment).

Nor do the RNs discipline employees. "[T]he exercise of disciplinary authority must lead to personnel action without independent investigation by upper management." Veolia Transp. Servs., Inc. & Amalgamated Transit Union, Loc. 1637, 363 N.L.R.B. 902, 908 (2016). The power to issue verbal reprimands or report to higher-ups does not suffice. Id. Aakash cites evidence in the record of only one instance in which an RN notified the Director of Staff Development about an employee's sleeping on the job. But the RN specifically requested an investigation and review by management personnel, by notifying the Director of Staff Development of the incident. The fact that the RN also chastised the sleeping employee does not, without more, demonstrate independent authority to discipline. Thus, the Board correctly concluded that Aakash had failed to provide evidence sufficient to meet its burden on that point as well.

Finally, Aakash did not prove that the RNs responsibly direct other employees using independent judgment. "An employee responsibly directs others when the employee is 'answerable' to the employer for other employees' 'discharge of a duty or obligation.'" Id. at 554 (quoting Arizona Pub. Serv. Co. v. NLRB, 453 F.2d 228, 231 (9th Cir. 1971)). The Board reasonably concluded that the RNs do not direct the work of the nursing aides and are not held accountable for the nursing aides' work whether or not the Director of Nursing or Assistant Director of Nursing is present. See Providence, 121 F.3d at 555. Thus, they do not responsibly direct the nursing aides.

C.  Conclusion

In sum, we deny Aakash's cross-petition for review and grant the Board's petition for enforcement.  General Counsel Robb was lawfully removed, and the RNs are not statutory supervisors under the National Labor Relations Act.

**PETITION FOR ENFORCEMENT GRANTED; CROSS-PETITION DENIED.**