**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMAZON.COM SERVICES, LLC; AMAZON LOGISTICS, INC., | No. 25-886 |
| | D.C. No. 2:24-cv-09564-SPG-MAA |
| *Plaintiffs - Appellants*, | |
| v. | |
| TEAMSTERS AMAZON NATIONAL NEGOTIATING COMMITTEE, | OPINION |
| *Intervenor - Appellee*, | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; MARVIN E. KAPLAN, in his official capacity as the Chairman of the National Labor Relations Board; DAVID M. PROUTY, in their official capacity as Member of the National Labor Relations Board; WILLIAM COWEN, in his official capacity as Acting General Counsel of the National Labor Relations Board; J. DOE, in his or her official capacity as National Labor Relations Board Administrative Law Judge, | |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted August 14, 2025
Pasadena, California

Filed December 29, 2025

Before: Jacqueline H. Nguyen, Danielle J. Forrest, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Forrest

## SUMMARY[*]

### Labor Law

The panel affirmed the district court's order denying Amazon.com Services, LLC's motion for a preliminary injunction to stop administrative proceedings before the National Labor Relations Board (Board) after Amazon was charged with unfair-labor practices under the National Labor Relations Act for refusing to recognize and bargain with the Teamsters Amazon National Negotiating Committee (Teamsters), which represent a group of former Amazon delivery drivers.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Amazon argued that the Board and its administrative procedures for adjudicating labor disputes are unconstitutional and sued to enjoin the Board and its named officials from engaging in unconstitutional administrative proceedings. The district court concluded that it lacked jurisdiction to issue the requested relief under the Norris-LaGuardia Act, 29 U.S.C. § 113, which strips federal courts of power "to issue any . . . injunction in a case involving or growing out of a labor dispute."

The panel held that the definition of "labor dispute" set forth in the Norris-LaGuardia Act, 29 U.S.C. § 113(a), imposes separate mandates for the pending case and the underlying labor dispute, both of which were satisfied here. First, the panel held that section 113(a)'s case-related requirements were satisfied. Both Amazon and the Teamsters are entangled in or implicated in the issues to be decided here because Amazon's constitutional challenges concern the agency's adjudication of the ULP claims that the Teamsters initiated. Second, the panel also held that the underlying Board proceeding is obviously a labor dispute. It concerns the terms of employment and the representation of the drivers, and the dispute is between employers and employees, namely, Amazon and the Teamsters. Accordingly, the panel affirmed the district court's denial of Amazon's motion for a preliminary injunction.

# COUNSEL

Kamran Mirrafati (argued), Seyfarth Shaw LLP, Los Angeles, California; Brian M. Stolzenbach, Seyfarth Shaw LLP, Chicago, Illinois; Giovanna Ferrari, Seyfarth Shaw LLP, San Francisco, California; for Plaintiffs-Appellants.

Hector De Haro (argued), Julie Gutman-Dickinson, and Sophie Newman, Bush Gottlieb, Glendale, California; Willie J. Burden Jr. and David O'Brien Seutholz, International Brotherhood of Teamsters, Washington, D.C.; for Intervenor-Appellee.

David P. Boehm (argued), Senior Attorney; Grace L. Pezzella and Paul A. Thomas, Trial Attorneys; Michael S. Dale, Supervisory Attorney; Kevin P. Flanagan, Deputy Assistant General Counsel; Dawn L. Goldstein, Deputy Associate General Counsel; Nancy E. Kessler Platt, Associate General Counsel; Stephanie Cahn, Acting Deputy General Counsel; William B. Cowen, Acting General Counsel; National Labor Relations Board, Washington, D.C.; for Defendants-Appellees.

# OPINION

FORREST, Circuit Judge:

Amazon was charged with unfair-labor practices under the National Labor Relations Act (NLRA) for refusing to recognize and bargain with the Teamsters Amazon National Negotiating Committee (Teamsters), which represented a group of former Amazon delivery drivers. Amazon argues that the National Labor Relations Board (Board) and its administrative procedures for adjudicating labor disputes are unconstitutional, and it sued to enjoin the Board and its named officials "from engaging in unconstitutional administrative proceedings designed to unlawfully force Amazon into collective bargaining with the Teamsters." The district court denied Amazon's motion for a preliminary injunction to stop the administrative proceedings, concluding that it lacked jurisdiction to issue this relief under the Norris-LaGuardia Act. This Act strips federal courts of power "to issue any . . . injunction in a case involving or growing out of a labor dispute." 29 U.S.C. § 101. Thus, the question presented here is whether this case, asserting constitutional challenges related to the Board, involves or grows out of a labor dispute. Because we conclude that it does, we affirm the district court.

## I.　BACKGROUND

### A.　The Board

Given the nature of Amazon's claims in this lawsuit, we begin with the challenged administrative structure. The Board is charged with administering the NLRA. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 297 (2017). The Board was established by Congress. 29 U.S.C. § 153(a). It has five

members who are appointed by the President with the advice and consent of the Senate. *Id.* Board members serve five-year terms and are removable by the President "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

Congress also established General Counsel for the Board. 29 U.S.C. § 153(d). The General Counsel investigates charges of unfair labor practices (ULP) asserted under the NLRA, files complaints, and prosecutes the complaints before the Board. *Id.* The General Counsel is appointed by the President, with the advice and consent of the Senate, to a four-year term but may be removed by the President at any time. *Id.*; *see NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1103–06 (9th Cir. 2023); *see also Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 441–45 (5th Cir. 2022) (holding "the NLRA does not provide tenure protections to the General Counsel" so the President may remove the General Counsel "without cause").

Typically, a complaint is assigned to an Administrative Law Judge (ALJ) for an initial hearing, report, and recommended order. *See* 29 U.S.C. § 160(b)–(c); 29 C.F.R. § 102.34. But the Board, or an individual member of the Board, may also conduct the hearing in the first instance. *See* 29 C.F.R. §§ 102.34, 102.50. ALJs are appointed by the Board, 5 U.S.C. § 3105, and are removable by the Board "only for good cause established and determined by the Merit Systems Protection Board," *id.* § 7521(a).

The Board is not bound by an ALJ's findings or conclusions. Once an ALJ has issued a report and recommended order, the parties may file exceptions with the Board. 29 U.S.C. § 160(c); 29 C.F.R. § 102.46. If no party files exceptions, the ALJ's recommended order becomes the

Board's order. 29 U.S.C. § 160(c). Once the Board issues a final decision, it may petition a federal court of appeals for enforcement of the order. *Id.* § 160(e). Conversely, an "aggrieved party" may petition a court of appeals to modify or set aside the Board's final order. *Id.* § 160(f).

## B. Amazon's Challenge

Amazon terminated its package-delivery contract with Battle Tested Strategies (BTS) in April 2023, with a two-month post-cancellation window in which BTS would continue to deliver some Amazon packages. Shortly after the cancellation, BTS recognized Teamsters Joint Council 42 as the bargaining representative for its drivers and signed a collective bargaining agreement with the union. The Teamsters argued that Amazon and BTS were joint employers and demanded that Amazon bargain with the union, as the representative of BTS drivers. Amazon declined and ceased contracting with BTS as scheduled.

The Teamsters filed various ULP charges against Amazon with the Board. The Board's General Counsel filed a complaint based on those charges, alleging, in part, that Amazon levied threats to discourage unionization, punished those who unionized, and improperly refused to recognize the Teamsters as a bargaining representative. Amazon then sued the Board in this action seeking injunctive and declaratory relief establishing that the statutory restrictions on the President's ability to remove the Board members and ALJs are unconstitutional. Amazon also moved for a preliminary injunction seeking to prevent the administrative proceeding from going forward. The Teamsters moved to intervene to protect the delivery drivers' interests and file an opposition to Amazon's motion for a preliminary injunction.

The district court granted the motion, authorizing the Teamsters to "fully participate in this action as a full party."

The district court denied Amazon's motion for a preliminary injunction to halt the Board proceedings. It held that the Norris-LaGuardia Act displaced the court's jurisdiction to issue an injunction because this case involves a labor dispute. The district court also concluded that, even if it had jurisdiction, Amazon had not proven that it would suffer any irreparable harm from the asserted unlawful removal restrictions. This appeal followed.

After oral argument on August 14, 2025, we ordered the parties to file supplemental briefs addressing the Fifth Circuit's decision in *Space Exploration Technologies Corp. v. NLRB (SpaceX)*, 151 F.4th 761 (5th Cir. 2025), which was issued on August 19. We also denied Amazon's second emergency motion for a stay of the administrative proceedings pending appeal.

## II.  DISCUSSION

The Norris-LaGuardia Act removes the power of federal courts to issue injunctive relief in cases "involving or growing out of a labor dispute." 29 U.S.C. § 101. Whether this Act applies is a question of law that we review de novo. *BNSF v. Int'l Bhd. of Teamsters Loc. 174*, 203 F.3d 703, 707 (9th Cir. 2000) (en banc), *as amended* (Mar. 8, 2000).

The issue before us is a matter of statutory interpretation. So "we start where we always do: with the text of the statute." *Van Buren v. United States*, 593 U.S. 374, 381 (2021). The Norris-LaGuardia Act provides that "[n]o court of the United States . . . shall have jurisdiction to issue any . . . temporary or permanent injunction in a case involving or growing out of a labor dispute." 29 U.S.C.

§ 101. The Act defines a "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." *Id.* § 113(c). It also explains:

> A case shall be held to involve or to grow out of a labor dispute when the *case* involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such *dispute* is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the *case* involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of

> "persons participating or interested" therein
> (as defined in this section).

*Id.* § 113(a) (emphasis added).[1]

The Board and the Teamsters argue that this case grows out of a labor dispute because Amazon brought a constitutional challenge in district court only after the Board decided to prosecute ULP claims against Amazon that the Teamsters initially raised. They further contend that § 113(a) establishes separate specifications for the pending *case* and the underlying *labor dispute*. The pending *case* must involve the "persons" identified in the first part of § 113(a), and the underlying *labor dispute* must fall within the three numbered descriptions in the second part. Applying this understanding, the Board and the Teamsters reason that because this case involves "an affiliated organization of . . . employees" (the Teamsters) and because the underlying labor dispute is between an "employer[] . . . and [an] . . . association[] of employees" (Amazon and the Teamsters), both aspects of § 113(a) are satisfied. *Id.*

Amazon, on the other hand, argues that its constitutional challenges to the Board and its proceedings are too far removed from a labor dispute to trigger the Norris-LaGuardia Act's jurisdictional limitation. Adopting wholesale the Fifth Circuit's recent analysis in *SpaceX*, Amazon contends that the Act does not apply because (1) this is not an action between Amazon and its employees, (2) the parties here are not "engaged in the same industry,

---

[1] There are a few statutory and judicial exceptions to the Norris-LaGuardia Act under which federal courts may still issue injunctions. *See* 29 U.S.C. § 107; *Reuter v. Skipper*, 4 F.3d 716, 720 (9th Cir. 1993). Amazon does not raise any of these exceptions here.

trade, craft, or occupation," *id.* § 113(b), and (3) its constitutional claims do not relate to the "terms or conditions of employment," *id.* § 113(c).

We agree that § 113(a) imposes separate requirements related to the pending case and the underlying labor dispute. In defining when a case "involves or grows out of a labor dispute," this provision first defines "case," identifying four categories of cases based on the "persons" involved. 29 U.S.C. § 113(a). It then identifies the potential party configurations of the underlying "dispute." *Id.* And it ends by identifying a final category of "case" based not on the "persons" involved but rather the existence of "conflicting or competing interests in a 'labor dispute.'" *Id.*

"When Congress uses 'one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.'" *FDA v. R.J. Reynolds Vapor Co.*, 606 U.S. 226, 238–39 (2025) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (1st ed. 2012)). Amazon's proposed reading of the Act, and the one adopted by the Fifth Circuit, flouts this rule by ignoring the different statutory descriptions for the case and the underlying dispute. *See SpaceX*, 151 F.4th at 770 (noting that the definition of "labor dispute" includes "any controversy concerning terms or conditions of employment" but concluding the *case* challenging removal protections for agency actors does "not concern 'terms or conditions of employment'"). This gloss overlooks a common canon of statutory interpretation and distorts the analysis. It is also at odds with the Third Circuit's recent decision in *Spring Creek Rehabilitation & Nursing Center LLC v. NLRB* (*Spring Creek*), No. 24-3043, 2025 WL 3467537 (3d Cir. Dec. 3, 2025).

The plain text provides that the underlying *labor dispute* must concern "terms or conditions of employment, or . . . the association or representation of persons." 29 U.S.C. § 113(c). The pending *case* need only "involve or . . . grow out of" that dispute, it need not itself be a labor dispute. *Id.* § 113(a); *accord id.* § 101; *see also Spring Creek*, 2025 WL 3467537, at *3 (noting the distinction between the labor dispute and the subject litigation). Thus, *SpaceX*'s reasoning that the Norris-LaGuardia Act did not apply because a *case* raising constitutional challenges to the Board's structure did not concern "terms or conditions of employment, or . . . the association or representation of persons," is inapt. *Id.* § 113(c); *see* 151 F.4th at 770.

Having established that § 113(a) imposes separate mandates for the pending case and the underlying labor dispute, we now consider whether they are met here.

## A.  The Case

As stated above, § 113(a)'s explication of *case* requires one of two categories to be satisfied. The first category centers on the status of the "persons" involved in the case: "the case involves persons who are engaged in the same industry, trade, craft, or occupation," "who . . . have direct or indirect interests [in the labor dispute]," "who are employees of the same employer," or "who are members of the same or an affiliated organization of employers or employees." 29 U.S.C. § 113(a). The second category centers on the interests involved: "the case involves any conflicting or competing interests in a 'labor dispute' . . . of 'persons participating or interested' therein." *Id.* Construing § 113, the Supreme Court reasoned that a case involves or grows out of a labor dispute under the Act when the "persons" identified are "involved on both sides of the case"

or when the case "'involves any conflicting or competing interests' in a labor dispute of 'persons' who stand in any one of several defined economic relationships."[2] *United States v. United Mine Workers of Am.*, 330 U.S. 258, 275 (1947).

We also consider the meaning of "involves." 29 U.S.C. § 113(a). "Involves" means "[t]o envelop within the folds of some condition or circumstance" and "[t]o entangle (a matter), to render intricate." *Involve*, The Oxford English Dictionary (1933) (parentheses in original); *accord Involve*, Webster's New International Dictionary (2d ed. 1934) (defining involve as "to implicate; as to involve one in debt or a crime; to be seriously involved" and "to contain by implication; to require, as implied elements, antecedent conditions, effect, etc." (emphases omitted)). Thus, a case must entangle or envelop the persons or interests described.

Section 113(a)'s *case*-related requirements are met here. Amazon brought this action because it is an employer facing ULP charges that will be adjudicated in Board proceedings. And the Teamsters is a party in its capacity as the bargaining representative for BTS drivers whose contract was terminated by Amazon and the entity that initiated the ULP allegations against Amazon. This case clearly "involves

---

[2] The statute provides that the presentation of "conflicting or competing interests in a 'labor dispute'" must be of "'persons participating or interested' [in the labor dispute]." 29 U.S.C. § 113(a). A person "participating or interested in a labor dispute" is defined as a person or association against whom "relief is sought" or who "is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation." *Id.* § 113(b).

persons who . . . have direct or indirect interests [in the underlying labor dispute]." 29 U.S.C. § 113(a). Both Amazon and the Teamsters are entangled in or implicated in the issues to be decided here because Amazon's constitutional challenges concern the agency's adjudication of the ULP claims that the Teamsters initiated. By raising its ULP allegations with the Board, the Teamsters availed itself of its sole mechanism for vindicating its rights under the NLRA. "Congress has entrusted to the Board exclusively the prosecution of the [ULP] proceeding by its own complaint, the conduct of the hearing, the adjudication and the granting of appropriate relief." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265 (1940); *see also Spring Creek*, 2025 WL 3467537, at *4 (holding a constitutional challenge to the NLRB involved or grew out of a labor dispute because the challenge "could not have [been] brought . . . but for the underlying dispute").

Amazon suggests that § 113 is not satisfied because it did not name the Teamsters as a party to this lawsuit. We disagree. "One who is not an original party to a lawsuit may of course become a party by intervention . . . ." *Karcher v. May*, 484 U.S. 72, 77 (1987). The Teamsters intervened here, without objection from Amazon, and the district court ordered that the Teamsters could "participate in this action as a full party." The Teamsters undoubtedly have a strong interest in this case. *See Spring Creek*, 2025 WL 3467537, at *4 n.4 (concluding that filing the initial ULP charge and intervening in the challenge to the NLRB's constitutional authority gave the union a strong interest in the case). Thus, we conclude that this *case* satisfies § 113(a)'s requirements.

## B.  The Labor Dispute

As already discussed, § 113 defines both the substantive and procedural contours of a "labor dispute." Subsection (c) provides that a "'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113(c). And subsection (a) makes clear that "such dispute" may take multiple forms. *Id.* § 113(a).

Here, the underlying Board proceeding obviously is a labor dispute. It concerns the terms of employment and the representation of the BTS drivers. *Id.* § 113(c). And the dispute is "between one or more employers . . . and one or more employees or associations of employees," *id.* § 113(a)—namely, Amazon (as employer) and the Teamsters (as the drivers' bargaining representative). This *dispute* satisfies § 113.

## C.  Amazon's Counterarguments

Amazon makes several arguments for why this case does not trigger the Norris-LaGuardia Act, none of which are persuasive.

### 1.

Relying on *SpaceX*, Amazon argues that the Act does not apply because "[t]his case involves a suit between Amazon and the NLRB, not between Amazon and its employees." *See SpaceX*, 151 F.4th at 770 (holding the "suits" at issue fell outside the Act because "they are not between the Employers and their employees—they are between the Employers and the NLRB"). This argument fails to distinguish between the *case*-related and *labor dispute*-

related requirements. A controversy "between one or more employers . . . and one or more employees or associations of employees" is one of the forms of *labor disputes* that trigger § 113(a). The pending case does not itself have to be in this form to "involve or . . . grow out of a labor dispute." Again, there is no reason to ignore the "well-established canon of statutory interpretation that the use of different words . . . demonstrates that Congress intended to convey a different meaning for those words." *United States v. Lemus*, 93 F.4th 1255, 1261 (9th Cir. 2024) (quoting *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)).

The statutory history further reinforces that the Act's application is not confined to lawsuits between employers and employees. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256 (1st ed. 2012) (explaining that statutory history is "part of the context of a statute"). In 1914, Congress passed the Clayton Act, which prohibited injunctive relief in "any case between an employer and employees" (and in cases involving similar relationships). 29 U.S.C. § 52. The Norris-LaGuardia Act, passed in 1932, expanded the Clayton Act's bar on injunctive relief to other types of cases arising out of labor disputes. *BNSF*, 203 F.3d at 711 (noting it was "Congress's explicit intention[]" in passing the Norris-LaGuardia Act to expand "labor dispute" beyond disputes involving an employer and employee). The Fifth Circuit's narrow reading conflicts with Congress's legislative judgment.

The Fifth Circuit also relied on history—legislative history. It observed that "Congress passed the Act 'in response to federal-court intervention on behalf of employers through the use of injunctive powers against unions and other associations of employees.'" *SpaceX*, 151 F.4th at 770 (quoting *Jacksonville Bulk Terminals, Inc. v.*

*Int'l Longshoremen's Ass'n*, 457 U.S. 702, 715 (1982)). And from this, it concluded that "Congress was not aiming to bar constitutional challenges to agency structure; it was targeting judicial overreach against employees." *Id.*

There are two problems with this reasoning. First, "the will of Congress" is reflected in its legislative text, and we undermine that will if we read the text "in a spirit of mutilating narrowness." *United States v. Hutcheson*, 312 U.S. 219, 235 (1941); *see also Spring Creek*, 2025 WL 3467537, at \*6 (rejecting this aspect of *SpaceX*, and declining "to read into the Act an exception that does not exist"). Where the plain text is clear, "speculation about what Congress may have intended matters far less than what Congress actually enacted." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 381 (2025). Second, Amazon's requested injunction *would* impede union activities, the very outcome the Act was enacted to prevent. As previously discussed, the Teamsters availed itself of its sole mechanism for vindicating its rights under the NLRA by presenting its ULP allegations to the Board. *See Amalgamated Util. Workers*, 309 U.S. at 264. Thus, enjoining the Board's adjudication of those issues would enjoin the Teamsters' efforts to receive the labor protections afforded by Congress. *See generally Spring Creek*, 2025 WL 3467537, at \*6.

Precedent supports this conclusion. The Supreme Court has construed the Norris-LaGuardia Act to cover cases other than those between employer and employee. *See, e.g.*, *New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 560–61 (1938) (reading the Act to "embrace controversies other than those between employers and employees; between labor unions seeking to represent employees and employers; and between persons seeking employment and employers"); *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 146

(1942) ("We recognize that by the terms of the statute there may be a 'labor dispute' where the disputants do not stand in the proximate relation of employer and employee."). The Fifth Circuit's earlier decision in *United Steelworkers of America v. Bishop*, 598 F.2d 408 (5th Cir. 1979), is also instructive. In *Bishop*, a customer filed a replevin action against a steel-fabrication plant when its order was not completed due to a workers' strike. *Id.* at 410. The customer demanded that the plant return the unfabricated steel, and a court issued an injunction compelling the plant to do so. *Id.* at 410–11. The Fifth Circuit held that the court lacked jurisdiction to issue the injunction, notwithstanding that the lawsuit concerned a contract action between the customer and plant. *Id.* at 414–15. "It is implicit, if not explicit, in [29 U.S.C. § 113] that a sufficient connection may exist between a litigant not directly involved in the labor dispute and the labor dispute itself that the case can be said to arise from the labor dispute, even though the union itself is not directly enjoined." *Id.*

Amazon relies on *Columbia River Packers* for the proposition that the present case involves a controversy "upon which the employer-employee relationship has no bearing." 315 U.S. at 147. *Columbia River Packers* is inapposite because it concerns what constitutes a "labor dispute" under 29 U.S.C. § 113(c), whereas this case concerns what constitutes a case that "involve[s] or . . . grow[s] out of a labor dispute" under § 113(a).

At issue in *Columbia River Packers* was a fish processor's antitrust suit brought against an association of independent fishermen. *See* 315 U.S. at 143–44. Although the association called itself a union, its members were fishermen who owned their boats and "carr[ied] on their business as independent entrepreneurs, uncontrolled by the

[plaintiff processing company] or other processors." *Id.* at 144–45. The association contracted with processors, obliging the processors to purchase fish only from union members and union members to sell only to contracted processors. *See id.* at 145. The plaintiff processing company refused to contract on these terms, and, given the association's control over the fish supply, was unable to source enough fish for its business. *See id.* The Supreme Court held that the Norris-LaGuardia Act was inapplicable because the case involved "a dispute among businessmen over the terms of a contract," not a § 113 labor dispute. *Id.* The fish sellers were not employees of the processors, did not seek to be, and thus operated "free from such controls as an employer might exercise." *Id.* at 147. That is, the dispute was a "controvers[y] upon which the employer-employee relationship," and consequently the Act, "ha[d] no bearing." *Id.*

Here, the existence of a labor dispute cannot reasonably be contested. Indeed, Amazon does not dispute that the charges pending before the Board are a labor dispute. Rather, Amazon argues that the relationship between the claims raised here and that underlying dispute is too attenuated to say that this case "involv[es] or grow[s] out of [that] labor dispute." 29 U.S.C. § 101. Amazon also suggests that it cannot be said that this case grows out of a labor dispute because Amazon has raised constitutional challenges.

The latter point is foreclosed by precedent. *See Reuter v. Skipper*, 4 F.3d 716, 719 (9th Cir. 1993) ("reject[ing]" plaintiff's argument that "because her action [was] founded upon an alleged constitutional violation . . . her case [was] not a 'labor dispute'" under the Act); *see also Spring Creek*, 2025 WL 3467537, at *6 (recognizing the Act's "anti-injunction provisions . . . serve the broader goal of

preventing judicial interference in management-labor relations" and that "Congress has not exempted challenges to agency structure from the Act's ambit" (citation modified)). The constitutional nature of Amazon's claims is not determinative. The former point also fails. Returning to *Bishop*, the Fifth Circuit faulted the district court for only superficially examining the contract suit without recognizing that a labor dispute was the underlying cause of the contractual controversy. 598 F.2d at 415; *see also Loc. 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1235 (2d Cir. 1992) (recognizing that RICO disputes can be labor disputes, and "the categories are not mutually exclusive"). So too here. Amazon's constitutional challenges concern the Board's power to adjudicate the labor dispute that exists between Amazon and the Teamsters. Indeed, Amazon acknowledges that "[t]his lawsuit was sparked by" those proceedings.

In sum, Amazon's assertion that this case does not involve a labor dispute because the controversy presented is not directly between employer and employee or has no bearing on the employer-employee relationship is unpersuasive.

**2.**

Amazon also argues that the Act does not apply because "[t]his case does not involve parties 'engaged in the same industry, trade, craft, or occupation' because it is a suit between Amazon and [the Board]." We need not wrestle long with this point because § 113(a) provides multiple categories of cases that grow out of a labor dispute, and a "case involv[ing] persons who are engaged in the same industry, trade, craft, or occupation" is only one of them. 29 U.S.C. § 113(a). Where we conclude that one of the other

statutory categories applies, we need not address this alternative category.

### 3.

Finally, Amazon urges us to adopt *SpaceX*'s application of the *Thunder Basin* factors. *See SpaceX*, 151 F.4th at 771 (discussing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)). The *Thunder Basin* inquiry arises when Congress enacts a statutory-review scheme of agency action that *implicitly* divests district courts of jurisdiction. *See* 510 U.S. at 207. Typically, Congress does so by providing for direct judicial review of administrative action in the courts of appeals. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). In this context, courts ask "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure.'" *Id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 212). In other words, the *Thunder Basin* inquiry probes whether an alternative review scheme for some claims covers all claims arising out of the subject agency action. *See id.* at 185.

In *SpaceX*, the Fifth Circuit held that even if the Norris-LaGuardia Act's "plain text [was] not dispositive," suits involving constitutional challenges to the Board "would still fall within the district courts' jurisdiction" under *Thunder Basin*. *SpaceX*, 151 F.4th at 771. That invocation of *Thunder Basin* was misplaced. The question is not whether the Norris-LaGuardia Act implicitly divests courts of jurisdiction over a type of claim. It is whether the explicit text of the Act bars jurisdiction to issue injunctions. That question is answered by the text, not by *Thunder Basin*. *See Babb v. Wilkie*, 589 U.S. 399, 413 (2020) ("[W]here, as here, the words of a statute are unambiguous, the 'judicial inquiry is complete.'" (alteration omitted) (quoting *Desert Palace,*

*Inc. v. Costa*, 539 U.S. 90, 98 (2003))); *see also Spring Creek*, 2025 WL 3467537, at \*6 n.6 ("The *Thunder Basin* factors are [] off point in addressing the jurisdictional question here.").

Both *Free Enterprise Fund v. Public Co. Accounting Oversight Board* and *Axon* recognize that Congress's explicit words control—even where *Thunder Basin* might otherwise apply. *See Free Enter. Fund*, 561 U.S. 477, 489 (2010) (applying *Thunder Basin* because the text did "not expressly limit the jurisdiction that other statutes confer on district courts"); *Axon*, 598 U.S. at 185 (noting that Congress may explicitly substitute an alternative review scheme); *see also Axon*, 598 U.S. at 208 (Gorsuch, J., concurring in judgment) (explaining that *Thunder Basin* "defies" or "[m]aybe worse . . . exhibits familiarity with none" of the text-first principles of statutory interpretation). These cases also emphasize that *Thunder Basin* is about the power of judicial review in the district court—not the power of the judiciary as a whole. *See Axon*, 598 U.S. at 185–86; *see also Free Enter. Fund*, 561 U.S. at 489. Indeed, the Norris-LaGuardia Act's administrative-review scheme likely would not preclude this suit from being heard in district court. *See Axon*, 598 U.S. at 189–96 (applying the *Thunder Basin* factors to conclude that similar challenges to removal protections for Federal Trade Commission and Securities and Exchange Commission ALJs could proceed in federal court). Ultimately, the subject matter of this case may be reviewable, but federal courts nonetheless lack the power to grant the injunctive relief that Amazon sought.

## III.  CONCLUSION

In the split between the Third and Fifth Circuits, we agree with the Third Circuit. "Federal courts are courts of

limited jurisdiction. [We] possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *accord Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10 (1799). Subject to exceptions not at issue here, Congress displaced the federal judiciary's power to issue injunctive relief in cases "involving or growing out of a labor dispute." 29 U.S.C. § 101. This case comes within the definition of such limitation, to which the district court properly adhered by denying Amazon's motion for a preliminary injunction.

**AFFIRMED.**